1  LATHAM & WATKINS LLP
   Melanie M. Blunschi (Bar No. 234264)
2     melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
3  San Francisco, California 94111
Telephone:  (415) 391-0600
4

5     William J. Trach (*pro hac vice*)
   william.trach@lw.com
6     U. Gwyn Williams (*pro hac vice*)
   gwyn.williams@lw.com
7     Nathan A. Sandals (*pro hac vice*)
   nathan.sandals@lw.com
8  200 Clarendon Street
Boston, MA 02116
9  Telephone:  (617) 948-6000

10  *Attorneys for Defendant*
*Abbott Laboratories*
11

12  **UNITED STATES DISTRICT COURT**

13  **NORTHERN DISTRICT OF CALIFORNIA**

14  **SAN FRANCISCO DIVISION**

15

16  MAX ULRICH and RYAN SCHAVRIEN,     Case No. 3:24-cv-09452-RFL
individually and on behalf of all others
17  similarly situated,     **DEFENDANT ABBOTT**
**LABORATORIES' NOTICE OF MOTION**
            Plaintiffs,     **AND MOTION TO DISMISS**
18                   **PLAINTIFFS' CLASS ACTION**
      v.     **COMPLAINT**
19
ABBOTT LABORATORIES,     Date:    June 10, 2025
20      Time:    10:00 AM
            Defendant.     Courtroom:  15
21      Hon. Rita F. Lin

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on June 10, 2025, at 10:00 A.M., or as soon thereafter as

4  the matter may be heard in the United States District Court for the Northern District of California,

5  Courtroom 15, Defendant Abbott Laboratories ("Abbott") will and hereby does move this Court

6  for an order in the above-captioned action dismissing Plaintiffs Max Ulrich's and Ryan

7  Schavrien's Class Action Complaint with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the

8  Federal Rules of Civil Procedure, on the basis that the matter is subject to dismissal under the first-

9  to-file rule and the prohibition on claim-splitting, and for failure to state a claim upon which relief

10 can be granted as well as for lack of standing for injunctive relief.  This Motion is based on this

11 Notice, the supporting Memorandum of Points and Authorities, the complete files and records in

12 this action, and any additional material and arguments as may be considered in connection with

13 the hearing.

14          Through this Motion, Abbott respectfully requests that the Complaint be dismissed with

15 prejudice.

16

17 Dated:  February 28, 2025                    Respectfully submitted,

18                                             LATHAM & WATKINS LLP
                                               Melanie M. Blunschi
19                                             William J. Trach
                                               U. Gwyn Williams
20                                             Nathan A. Sandals

21
                                             By  */s/ William J. Trach*
22                                               William J. Trach

23                                             Attorneys for Defendant
                                               Abbott Laboratories
24

25

26

27

28

1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND .............................................................................................. 1

    A.     The products.......................................................................................... 1

    B.     Plaintiffs' claims. .................................................................................. 2

    C.     Overlapping, first-filed cases. ............................................................... 4

III.   STANDARD OF REVIEW ............................................................................. 5

IV.    ARGUMENT ................................................................................................... 6

    A.     Plaintiffs' Similac Go & Grow claims should be dismissed under
         the first-to-file rule.................................................................................. 6

    B.     Plaintiffs' PediaSure claims should be dismissed because they
         constitute impermissible claim-splitting. ............................................. 10

    C.     Plaintiffs' claims should be dismissed for failure to state a claim...................... 13

         1.     Plaintiffs have not satisfied Rules 12(b)(6) or 9(b). ............................... 14

                a.     Plaintiffs' added sugar theory. ....................................................... 15

                b.     Plaintiffs' DHA theory.................................................................... 17

                c.     Plaintiffs' "#1 Pediatrician Recommended Brand"
                       theory. ............................................................................................. 18

         2.     Plaintiffs lack standing to pursue injunctive relief. ............................... 19

V.     CONCLUSION............................................................................................... 21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................5

6

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019) ...........................................................................14

7

8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................5

9

*Bojorquez v. Abercrombie & Fitch, Co.,*
    193 F. Supp. 3d 1117 (C.D. Cal. 2016) ............................................10, 11, 13

10

11

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) .............................................................................6

12

13

*Cheslow v. Ghirardelli Chocolate Co.,*
    497 F. Supp. 3d 540 (N.D. Cal. 2020) ...............................................................16

14

15

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,*
    710 F.3d 946 (9th Cir. 2013) ...............................................................................5

16

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)..............................................................................................19

17

18

*Cook v. C.R. Eng., Inc.,*
    No. CV 12-3515-GW CWX, 2012 WL 2373258 (C.D. Cal. June 21, 2012) .........11

19

20

*Costantini v. Trans World Airlines,*
    681 F.2d 1199 (9th Cir.1982) ......................................................................11, 12

21

*Cunha v. IntelliCheck, LLC,*
    254 F. Supp. 3d 1124 (N.D. Cal. 2017) .............................................................20

22

23

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) .............................................................................20

24

25

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ................................................................14, 19, 21

26

*Davidson v. Sprout Foods, Inc.,*
    106 F.4th 842 (9th Cir. 2024) ......................................................................15, 16

27

28

*Gibson v. Jaguar Land Rover N. Am., LLC,*
    No. CV 20-00769-CJC(GJSx), 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .........21

ii

*Greene v. H & R Block Eastern Enterprises, Inc.*,
    727 F. Supp. 2d 1363 (S.D. Fla. 2010) ...................................................................13

*Gutierrez et. al v. Abbott Lab'ys*,
    2:24-CV-02427-TLN-SCR ............................................................................................1, 4

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
    No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) .......................................20

*In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    707 F. Supp. 3d 103 (D. Mass. 2023) .........................................................................20

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) .....................................................................9, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................6, 14

*Koehler v. Pepperidge Farm, Inc.*,
    No.: 13–cv–02644–YGR, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) ......................7

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) ...................................................................................7, 8

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................................................15

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .........................................................................................2

*Manier v. L'Oreal USA, Inc.*,
    No. 2:16-CV-06886-ODW-KS, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017)....................7

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .........................................................................................8

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) ......................................................................................16

*Mendoza v. Amalgamated Transit Union Int'l*,
    30 F.4th 879 (9th Cir. 2022) ...................................................................................6, 12

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ..........................................................................................15

*Nakash v. Super. Ct.*,
    196 Cal. App. 3d 59 (1987) .........................................................................................12

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ...................................................................................6, 7, 9

iii

*Pedro v. Millennium Prod., Inc.*,
    2016 WL 3029681 (N.D. Cal. May 27, 2016) ....................................................................7, 8

*Prescott v. Abbott Lab'ys*,
    736 F. Supp. 3d 775 (N.D. Cal. 2024) ................................................................................20

*Ruff v. Del Monte Corp.*,
    No. C 12-05251 JSW, 2013 WL 1435230 (N.D. Cal. Apr. 9, 2013)......................................7

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ..............................................................................................6

*Sargent v. MaineHealth*,
    No. 2:22-cv-00006-JAW, 2022 WL 2132272 (D. Me. June 14, 2022) ................................12

*Schwartz v. Frito-Lay N. Am.*,
    No. C-12-02740 EDL, 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) ..................................9

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007)..........................................................................11, 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..............................................................................................21

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..............................................................................................................6

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ................................................................................................4

*Urban v. Tesla, Inc.*,
    698 F. Supp. 3d 1124 (N.D. Cal. 2023) ..............................................................................19

*VanCleave et. al v. Abbott Lab'ys* ,
    Case No. 19CV345045 (Super. Ct. Santa Clara Cnty.) .....................................................1, 4

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
    967 F. Supp. 2d 1289 (N.D. Cal. 2013) .............................................................................6, 7

*Warth v. Seldin*,
    422 U.S. 490 (1975)...............................................................................................................6

*Young v. L'Oreal USA, Inc.*,
    526 F. Supp. 3d 700 (N.D. Cal. 2021) .......................................................................6, 7, 8, 9

*Zimmer v. Dometic Corp.*,
    2018 WL 1135634 (C.D. Cal. Feb. 22, 2018)........................................................................8

iv

1

**REGULATIONS**

2

21 C.F.R.
    § 101.13(b)(2)(i) ...................................................................................................18
    § 101.13(b)(2)(ii) ..................................................................................................18

3

4

**OTHER AUTHORITIES**

5

https://www.pediasureclassactionlawsuit.com/Home/FAQ (last visited Feb. 25,
    2025) ....................................................................................................................5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        This product labeling case involves two distinct Abbott products.  The first is Similac Go
4    & Grow, a toddler drink intended for children aged 1–3.  The second is PediaSure, a nutritional
5    supplement primarily intended for children aged 2–13.

6        Plaintiffs allege that both products' labels include certain statements that are false or
7    misleading.  On the substance, Plaintiffs are dead wrong, as explained below.  But the threshold
8    problems for Plaintiffs are procedural.  As for Similac Go & Grow, Plaintiffs' claims and their
9    proposed class overlap with those in an earlier-filed action pending in the Eastern District of
10   California, *Gutierrez v. Abbott Laboratories*.  Under Ninth Circuit precedent recognizing the
11   importance of preserving judicial resources and avoiding inconsistent judgments, this later-filed
12   action should be dismissed under the first-to-file rule.  As for PediaSure, both Plaintiffs are part of
13   certified classes of California PediaSure purchasers whose overlapping claims are being
14   adjudicated in a California state court action, *VanCleave v. Abbott Laboratories*.  Indeed, just last
15   week, a jury returned a complete defense verdict for Abbott on those claims, finding that
16   PediaSure's labeling is not false or misleading.  Under the well-established doctrine precluding
17   claim-splitting, Plaintiffs are barred from taking a second bite of the apple here.

18       Were those procedural defects not enough, Plaintiffs' claims fail for several substantive
19   reasons too.  *First*, none of Plaintiffs' three liability theories is adequately pleaded under Federal
20   Rule of Civil Procedure 12(b)(6), much less under Rule 9(b).  *Second*, and independently,
21   Plaintiffs' injunctive relief claims fail for lack of standing because Plaintiffs fail to adequately
22   allege any real or immediate threat that they will be wronged again and, separately, because
23   Plaintiffs have not plausibly alleged facts showing the absence of an adequate remedy at law.

24       Abbott therefore respectfully requests that the Court dismiss the Complaint.

25   **II.    BACKGROUND**

26       **A.    The products.**

27       Abbott is an Illinois-based healthcare company that manufactures, markets, and distributes
28   a variety of medical devices, nutrition supplements, and other products.  Compl. ¶ 31.  Among

1

those is Similac Go & Grow, a milk-based toddler drink intended for children 12–36 months old. Similac Go & Grow's ingredients and benefits are expressly set out on its label. *See* Ex. A (Go & Grow Labels).[1]  For example, Similac Go & Grow's label states that it contains "DHA," "Lutein," and "Vitamin E"—because it does. *Id.*  The label also states that it contains, via two servings, "28 Important Nutrients for Growth and Development"—again, because it does. *Id.*  The label also includes the federally mandated Nutrition Facts Panel, which sets out precisely what Similac Go & Grow contains and how much, in percentage terms, each nutrient contributes to a daily diet. *Id.* For example, the Nutrition Facts Panel on Similac Go & Grow 360 Total Care says exactly how many grams of total sugars the product contains (7 grams), how many of those grams are from added sugar (4 grams), and how much that contributes to a daily diet (16% per serving). *Id.*

Also among Abbott's products is PediaSure, a nutrition supplement primarily intended for children over two. Compl. ¶ 19; Ex. B (PediaSure Labels).  The base product, PediaSure Grow & Gain, is primarily designed to support caloric needs for children behind in growth and to help fill nutritional gaps in kids' diets. *See* Ex. B.  PediaSure Grow & Gain contains both macronutrients (protein, fat, and carbohydrates) and micronutrients (vitamins and minerals). *Id.*  In the latter category, PediaSure Grow & Gain contains 27 vitamins and minerals. *Id.*  Accordingly, PediaSure Grow & Gain's label states that it is "Complete, Balanced Nutrition" (because it is), that it contains "DHA" (because it does), and that it is the "#1 Pediatrician Recommended Brand" (because survey evidence shows as much). *Id.*  And, just like Similac Go & Grow products, all PediaSure products also include the Nutrition Facts Panel on every single label, and every Nutrition Facts Panel sets out how much added sugar the product contains. *Id.*

## B.    Plaintiffs' claims.

Plaintiffs Max Ulrich and Ryan Schavrien are California residents who purport to sue on behalf of a putative nationwide class and a California subclass of Similac Go & Grow and PediaSure purchasers. Compl. ¶¶ 29–30.  Plaintiff Ulrich claims that he purchased Similac Go &

---

[1] The Court may consider the products' labels attached as exhibits hereto because the Complaint includes portions thereof, *see* Compl. ¶¶ 17, 20, such that the full labels are incorporated by reference. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

Grow between mid-2021 and mid-2022 and that he purchased PediaSure in early 2023.  *Id.* ¶ 29.  Plaintiff Schavrien alleges that he purchased PediaSure between 2016 and April 2024.  *Id.* ¶ 30.  Schavrien does not allege that he ever purchased Similac Go & Grow.  *See generally id.*

Across the two products, Plaintiffs challenge labeling statements under three liability theories.  *Id.* ¶ 21.[2]  The first liability theory attacks certain labeling statements on both products that are allegedly false or misleading in light of the products' added sugar content.  *Id.*  The second liability theory challenges statements on both products involving the ingredient docosahexaenoic acid ("DHA"), an omega-3 fatty acid.  *Id.*  The third liability theory disputes the statement "#1 Pediatrician Recommended Brand," which appears only on PediaSure products.  *Id.*  Specifically:

| Liability Theory | Similac Go & Grow Challenged Labeling Statements | PediaSure Challenged Labeling Statements |
|---|---|---|
| **Added Sugar Theory** | • "Toddler Drink" (¶¶ 16, 42)<br>• "360 Total Care" (¶¶ 16, 42)<br>• "12-36 months" (¶¶ 16, 42) | • "Complete, Balanced Nutrition" (¶¶ 19, 42)<br>• "Balanced Nutrition to Help Fill Gaps" (¶¶ 19, 42) |
| **DHA Theory** | • "DHA" (¶¶ 16, 42)<br>• "Brain Development" (¶¶ 16, 42) | • "DHA Omega-3" (¶¶ 19, 42) |
| **"#1 Pediatrician Recommended Brand" Theory** | None | • "#1 Pediatrician Recommended Brand" (¶¶ 19, 42) |

Both Plaintiffs allege that they overpaid for the products because of these allegedly false or misleading labeling statements.  *Id.* ¶¶ 29–30.  Plaintiffs assert claims under a trio of California statutes:  the False Advertising Law ("FAL"), the Consumer Legal Remedies Act ("CLRA"), and

---

[2]  The Complaint also references statements that appeared on two Abbott websites, www.pediasure.com and www.similac.com.  Compl. ¶ 43.  But Plaintiffs do not include those statements as part of their definition of "Challenged Representations."  *Id.* ¶ 42.  Further, there is no allegation that Plaintiffs so much as saw, let alone relied upon, on any of the referenced website statements.  *See generally Id.*  Nor do Plaintiffs so much as allege that these website statements are false or misleading.  *Id.*  Rather, Plaintiffs include these not as challenged statements themselves but rather merely in an attempt to "demonstrate[e] the company's intent and knowledge that such claims are material to consumers."  *Id.* ¶ 43.

1    the Unfair Competition Law ("UCL").  *Id.* ¶¶ 97, 113, 137.  They also assert warranty and unjust

2    enrichment claims.  *Id.* ¶¶ 146-148; 156.  Plaintiffs seek monetary and injunctive relief.  *Id.* ¶ 158.

3           **C.**      **Overlapping, first-filed cases.**

4          This is not the only or even the first case with respect to either product's labeling asserting

5    claims brought on behalf of California purchasers.

6          ***Gutierrez* - Similac Go & Grow:**  In September 2024, Plaintiff Alana Gutierrez filed a

7    putative class action regarding the labeling of Similac Go & Grow in the Eastern District of

8    California.  *See Gutierrez et. al v. Abbott Lab'ys*, 2:24-CV-02427-TLN-SCR.  The plaintiff in

9    *Gutierrez* alleges that seven statements on Similac Go & Grow labels are misleading—as here.

10    Gutierrez Compl. ¶ 37.[3]  Among those challenged statements are references to "DHA" and "Brain

11    Development"—as here.  *Id.*  Among the liability theories in *Gutierrez* is that Similac Go & Grow

12    contains too much added sugar—as here.  *Id*. ¶ 51.  The plaintiff in *Gutierrez* asserts claims under

13    the CLRA, UCL, and FAL, as well as a claim for unjust enrichment—as here.  *Id*. ¶¶ 98, 135.  And

14    the plaintiff in *Gutierrez* purports to bring suit on behalf of a putative class of California

15    consumers—again, as here.  *Id.* ¶¶ 71-72.  Abbott's motion to dismiss the *Gutierrez* Complaint is

16    pending.

17          ***VanCleave* - PediaSure:**  In May 2019, Plaintiff Elizabeth VanCleave (later joined by

18    Plaintiff Katherine Hassan) filed a class action regarding the labeling of PediaSure in California

19    state court in Santa Clara County.  *See VanCleave et. al v. Abbott Lab'ys*, Case No. 19CV345045.

20    Plaintiffs there allege that certain statements on PediaSure labels are misleading—as here.  *See*

21    *VanCleave* First Amended Complaint ("FAC") ¶ 3.  Among those challenged statements are

22    "Complete, Balanced Nutrition" and "Balanced Nutrition to Help Fill Gaps"—as here.  *Id.*  And,

23    while it was dismissed via motion practice, Plaintiffs previously alleged claims based on the

24    labeling statement "#1 Pediatrician Recommended Brand"—as here.  *See VanCleave*, Demurrer

25    and Motion to Strike Opinion and Order at 7, 14 (Dec. 23, 2019).  The liability theory in *VanCleave*

26

27    _____
28    [3] Courts may take judicial notice of pleadings in similar cases because such documents are part of the public record and have a direct relation to the matters at issue.  *See United States. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992).

1  is that PediaSure contains too much added sugar—as here.  *VanCleave* FAC ¶ 136.  Plaintiffs in

2  *VanCleave* assert claims under the CLRA, UCL, and FAL, as well as warranty claims and an unjust

3  enrichment claim—as here.  *Id*. ¶ 18.  And not only do plaintiffs in *VanCleave* purport to represent

4  classes of California PediaSure purchasers—again, as here—but the court in *VanCleave* certified

5  several such classes.  *See VanCleave*, Class Cert. Order at 7–9 (Apr. 5, 2024).  To the extent they

6  purchased PediaSure where and when they say they did, Plaintiffs Schavrien and Ulrich are

7  members of one or more of those certified classes.  *See* Compl. ¶¶ 29–30.  Yet neither Plaintiff

8  Schavrien nor Plaintiff Ulrich opted out of the *VanCleave* certified classes.  *See generally* Compl.

9  (nowhere alleging that either Plaintiff here opted out).[4]

10       In January and February 2025, the *VanCleave* case was tried to a California jury.  *See*

11  Docket, *VanCleave,* Case No. 19CV345045.  Last week, the jury returned a full defense verdict in

12  Abbott's favor, wholly rejecting the certified classes' claims that PediaSure's labeling is false or

13  misleading.  *See VanCleave*, Verdict Form (Feb. 21, 2025).  Among other findings, the jury found

14  that labeling statements like "Complete, Balanced Nutrition" and "Nutrition to Help Fill Gaps"

15  were true and that the product conformed to the label.  *Id*.  In so doing, the jury rejected the certified

16  classes' falsity theories, including that PediaSure has too much added sugar.

17  **III.    STANDARD OF REVIEW**

18       Under Federal Rule of Civil Procedure 12(b)(6), dismissal is required where the complaint

19  fails to state a cognizable legal theory or does not allege sufficient facts to support a cognizable

20  legal theory.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

21  To survive, a complaint "must contain sufficient factual matter" to "state a claim to relief that is

22  plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

23  *Twombly*, 550 U.S. 544, 570 (2007)).  Although courts generally must accept as true a complaint's

24  "well-pleaded facts," courts need not accept "legal conclusions" or "[t]hreadbare recitals of the

25  elements of a cause of action."  *Iqbal*, 556 U.S. at 678–79.  Under the claim-splitting doctrine,

26

27  ───────────────

[4] The deadline for class members to opt out of the certified classes in *VanCleave* was September

28  3, 2024.  *See*  https://www.pediasureclassactionlawsuit.com/Home/FAQ (last visited Feb. 25, 2025).

1     cases are subject to 12(b)(6) dismissal where the standard is met, as explained below. *See Mendoza*

2     *v. Amalgamated Transit Union Int'l,* 30 F.4th 879, 884 (9th Cir. 2022).

3          Because Plaintiffs' claims are grounded in fraud, they must also meet the heightened

4     pleading standard under Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567

5     F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud to state with particularity

6     the circumstances constituting that fraud. To satisfy this standard, the "complaint must identify

7     the who, what, when, where, and how of the misconduct charged, as well as what is false or

8     misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia*

9     *Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotations omitted).

10        Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on

11     lack of subject matter jurisdiction, including for lack of standing. *Chandler v. State Farm Mut.*

12     *Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). To survive a Rule 12(b)(1) challenge, "the

13     plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]" under Article

14     III, Section 2 of the U.S. Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016)

15     (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

16        Finally, the first-to-file rule is a separate ground for dismissal that hinges on the multi-

17     factor analysis described below. *See Young v. L'Oreal USA, Inc*., 526 F. Supp. 3d 700, 704 (N.D.

18     Cal. 2021). In applying the first-to-file rule, courts "maximize economy, consistency, and comity."

19     *Id*. (citation and internal quotations omitted).

20    **IV.**    **ARGUMENT**

21        **A.**    **Plaintiffs' Similac Go & Grow claims should be dismissed under the first-to-file rule.**

22        The first-to-file rule is a well-recognized doctrine of federal comity pursuant to which

23     federal district courts exercise discretion to decline jurisdiction over an action that involves similar

24     parties and issues as an earlier-filed federal case. *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d

25     93, 94–95 (9th Cir. 1982). The rule reduces burdens on the federal judiciary and prevents

26     conflicting judgments. *See Wallerstein v. Dole Fresh Vegetables, Inc.,* 967 F. Supp. 2d 1289, 1292

27     (N.D. Cal. 2013). Accordingly, courts should not "disregard[] lightly" the first-to-file rule.

28

*Koehler v. Pepperidge Farm, Inc.*, No.: 13–cv–02644–YGR, 2013 WL 4806895, at *2 (N.D. Cal. Sept. 9, 2013).

Courts in this Circuit consider three factors in considering motions brought under this rule: (1) the chronology of the actions, (2) the similarity of the parties, and (3) the similarity of the issues. *Manier v. L'Oreal USA, Inc.*, No. 2:16-CV-06886-ODW-KS, 2017 WL 59066, at *2 (C.D. Cal. Jan. 4, 2017) (citation omitted); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (affirming district court's decision applying three-factor test). Here, all three factors support dismissing Plaintiffs' Similac Go & Grow claims in light of the first-filed *Gutierrez* case.

**Chronology of the actions:** *Gutierrez* was filed well ahead of this case, on September 5, 2024, three-plus months before Plaintiffs here filed suit. Compl. at 54. This factor thus favors dismissal. *See Pacesetter Sys.*, 678 F.2d at 95 (applying first-to-file rule to dismiss action filed three days after first-filed case).

**Similarity of the parties:** For this second factor to support dismissal, the parties need only be substantially similar. *See Kohn Law Grp.*, 787 F.3d at 1240 (first-to-file rule does not require exact identity of parties); *see Young*, 526 F. Supp. 3d at 705 (applying first-to-file rule to later-filed class action involving similar classes of purchasers).

Here, the Defendant is identical in the two actions: Abbott Laboratories. To be sure, the two cases are brought by different named Plaintiffs: Plaintiffs Schavrien and Ulrich in this case and Gutierrez in the earlier case. But all three are California residents who purportedly purchased Similac Go & Grow within the last four years. Compl. ¶¶ 29–30; *Gutierrez* Compl. ¶ 5. More to the point, though, the named Plaintiffs in both cases purport to represent overlapping classes of California consumers. This is critical, because courts look past the identity of the named plaintiffs and instead assess whether the classes in the two actions "represent ***at least some*** of the same individuals." *Pedro v. Millennium Prod., Inc.*, 2016 WL 3029681, at *3–4 (N.D. Cal. May 27, 2016) (emphasis added); *Ruff v. Del Monte Corp.*, No. C 12-05251 JSW, 2013 WL 1435230, at *3 (N.D. Cal. Apr. 9, 2013) (finding substantial similarity among putative classes in three complaints and applying first-to-file rule); *see also Wallerstein*, 967 F. Supp. 2d at 1296 ("Courts

7

have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals."). This standard is satisfied here, because the plaintiffs in both cases purport to represent classes of California purchasers of Similac Go & Grow in the last four years. *Compare* Compl. ¶ 70 ("All residents of California who, within four years prior to the filing of this action, purchased the Products containing the Challenged Representations on the Products' labels for purposes other than resale."), *with Gutierrez* Compl. ¶ 72 ("All persons in the State of California who purchased the Product between 2021 and the present.").

Nor does it matter that Plaintiffs' Complaint here also seeks a nationwide class of Similac Go & Grow purchasers. Compl. ¶ 70. Only some overlap in the proposed classes is required, and here the overlap is substantial. *See Pedro*, 2016 WL 3029681, at *3–4 (noting first-to-file rule's focus on partial, rather than complete, overlap in alleged classes); *see also Young*, 526 F. Supp. 3d at 705 (finding sufficient overlap between a California class and a nationwide class and applying first-to-file rule). Further, it is highly unlikely that the Plaintiffs would even seek—let alone successfully certify—a nationwide class, because the Ninth Circuit has recognized that the material differences between California's consumer protection laws and those of many other states "overwhelm common issues and preclude predominance for a single nationwide class." *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590-91, 596 (9th Cir. 2012) (vacating certification of nationwide class). This factor, too, favors dismissal.

**Similarity of the issues:** This final factor favors application of the first-to-file rule so long as the issues in the two cases, even if "not [] identical," are "substantially similar." *Kohn Law Grp.*, 787 F.3d at 1240. In determining whether the issues are substantially similar, courts focus on whether both actions share some "underlying factual allegations." *See Zimmer v. Dometic Corp.*, 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018); *Pedro*, 2016 WL 3029681, at *5 (similar issues exist where "claims in the earlier and later-filed lawsuits implicate 'common facts'").

Here, the factual underpinnings of the allegations in *Gutierrez* and Plaintiffs' Similac Go & Grow claims here are overwhelmingly alike. Both sets of claims center on the same product,

8

both cases challenge the same labeling statements, and both do so for the same reasons.  Both complaints contend that Abbott's marketing and labeling of Similac Go & Grow is misleading.  *See Gutierrez* Compl. ¶ 3 ("Defendants' misleading labeling caused Plaintiff and members of the class to pay a price premium for the Product") *and see* Compl. ¶ 23 (describing "Abbott's false, deceptive, and misleading claims").  Both Complaints focus on the alleged impact of Similac Go & Grow on children under two years old.  *See Gutierrez* Compl. ¶ 2 ("The Product is harmful both nutritionally and developmentally for children under two") *and see* Compl. ¶ 21 ("These beverages, which are loaded with sugar, corn syrup, vegetable oils, and powdered milk, are harmful to toddlers' health").  Both complaints even allege that some of the same labeling statements are misleading and unlawful.  *See, e.g.*, *Gutierrez* Compl. ¶¶ 13–14, 37–41 (challenging "DHA" and "Brain Development"); Compl. ¶¶ 6–10 (same).  This final factor, too, favors dismissal.

Courts commonly apply the first-to-file in similar circumstances.  For example, in *Pacesetter*, the Ninth Circuit affirmed a district court's dismissal of a case on first-to-file grounds.  678 F.2d at 96–97.  There, the Ninth Circuit determined that both cases (1) involved the same three parties, (2) centered on the validity and enforceability of the same patents, and (3) differed substantively only in the remedy sought.  *Id*. at 95-96.  Similarly, in *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc*., the court dismissed the second filed action, explaining that "dismissal is proper where the court of first filing provides adequate remedies."  544 F. Supp. 2d 949, 963 (N.D. Cal. 2008).  There, the court found that all the requirements under the first-to-file rule were met when (1) the second filed matter was filed four months after the first, (2) the parties were sufficiently identical even though an additional defendant was added in the later case, and (3) the issues were sufficiently similar where, among other allegations, both cases pleaded unfair competition and requested similar relief.  *Id.* at 958–59.  Courts in this district have even acknowledged the applicability of the first-to-file rule to consumer labeling class actions like this one.  *See Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *2–3 (N.D. Cal. Sept. 12, 2012) (applying first-to-file rule to later-filed, duplicative consumer class action centered on allegations that "All-Natural" label statements were misleading); *Young*, 526 F. Supp.

9

1    3d at 705 (granting defendant's first-to-file motion where issues were "virtually identical"). This

2    case should be no different.

3         Dismissal is the appropriate remedy here because the goal of judicial efficiency will be

4    best served by this Court declining to accept jurisdiction and because the two cases seek the same

5    remedies (monetary and injunctive relief). *See Intersearch Worldwide, Ltd.*, 544 F. Supp. 2d 949

6    at 963 ("Dismissal is proper where the court of first filing provides adequate remedies.").

7    Permitting multiple litigations of nearly identical claims seeking the same remedies advances no

8    judicial purpose and risks conflicting decisions in substantially similar cases, both of which the

9    Ninth Circuit has cautioned district courts to avoid. *See id.* Indeed, these are the same interests

10   that led the courts in *Pacemaker* and *Intersearch Worldwide* to apply the first-to-file rule to dismiss

11   later-filed claims. There is no reason to deviate from that precedent here. At a minimum, however,

12   the Court should stay Plaintiffs' Similac Go & Grow claims pending a final, non-appealable

13   judgment in *Gutierrez*.

14       **B.**    **Plaintiffs' PediaSure claims should be dismissed because they constitute**
15              **impermissible claim-splitting.**

16        Plaintiffs' PediaSure-based claims should be dismissed under the doctrine prohibiting

17   claim-splitting. Plaintiffs here are part of the certified classes of California PediaSure consumers

18   who are challenging PediaSure's labeling by way of the same causes of action as here in an earlier-

19   filed California state court action, including on the grounds that PediaSure allegedly contains too

20   much added sugar. Plaintiffs cannot bring two separate suits challenging the same product label.

21        These circumstances fit squarely within what the claim-splitting doctrine prohibits. That

22   doctrine safeguards defendants from the undue burden of facing repetitive litigation over identical

23   or substantially similar claims. *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117,

24   1123 (C.D. Cal. 2016). This makes good sense: Having spent the last six years disproving

25   Plaintiffs' claims in *VanCleave*, Abbott should not have to do so all over again here. Nor should

26   court resources be spent adjudicating claims that are already being adjudicated in another forum.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 3:24-cv-09452-RFL
DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT

In applying this doctrine, courts assess whether the plaintiff was, or is, a class member in a previously certified class action involving the same transactional nucleus of facts. *See id*. at 1123–25 (dismissing a later-filed class action in which the named plaintiff was a class member in an earlier-filed class action); *Cook v. C.R. Eng., Inc*., No. CV 12-3515-GW CWX, 2012 WL 2373258, at *5-6 (C.D. Cal. June 21, 2012) (same result where plaintiff was named in both actions).  Specifically, courts in this Circuit apply a four-criteria test, considering whether (1) rights or interests established in an eventual judgment in the prior case would be destroyed or impaired by prosecution of the second action; (2) substantially the same evidence will be presented in the two actions; (3) the two suits involve the alleged infringement of the same right; and (4) the two suits arise out of the same transactional nucleus of facts. *See Bojorquez*, 193 F. Supp. 3d at 1125 (citing *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982)).

While the "last of these criteria is the most important," *Constantini*, 681 F.2d at 1202, all four are satisfied here. *First*, if Plaintiffs' PediaSure claims are re-litigated here, Abbott's rights arising from the verdict in *VanCleave* would be destroyed or at least impaired.  Plaintiffs should not be permitted to re-try these losing claims here, because that would allow them to harass Abbott with repetitive actions based on the same claims arising from the same purchases. *Single Chip Sys. Corp. v. Intermec IP Corp*., 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007) (emphasizing primary objective of rule against claim-splitting is preventing plaintiffs from harassing defendants).

*Second*, substantially the same evidence has been or would be presented in both cases.  Both cases challenge some of the same labeling statements, such as "Complete, Balanced Nutrition" and "Balanced Nutrition to Help Fill Gaps." Compl. ¶ 19; *VanCleave* FAC ¶ 5.  Indeed, those labeling statements were the primary focus of the trial that just ended in Abbott's favor in Santa Clara County.  *See VanCleave*, Verdict Form (Feb. 21, 2025).  Testimony and documentary evidence about the meaning of and Abbott's scientific substantiation for those statements was presented in Santa Clara County and would need to be presented again here.  But that's far from all.  Beyond precisely what statements are challenged, other overlapping evidence includes sales data, regulatory evidence, consumer survey evidence, internal market research, evidence on the

11

benefits and other health effects of added sugar, evidence on PediaSure's intended consumers, plus evidence on PediaSure's 27 vitamins and minerals, three macronutrients, and other benefits—among countless other subjects. Several of the same fact witnesses would have to testify. So would experts on the same topics. And many of the same documents would need to be introduced in evidence here as in *VanCleave*. *See Costantini*, 681 F.2d at 1202 (finding factor met where evidence was substantially same across two cases even if second case included more evidence).

*Third*, both suits involve alleged infringement of the same consumer protection rights. *See VanCleave* FAC ¶ 18 (alleging violations of CLRA, the FAL, and UCL) *and see* Compl. ¶¶ 97, 113, 137 (also alleging violations of the CLRA, FAL and UCL). Improper claim-splitting arises when both lawsuits allege infringement of similar rights. *Mendoza*, 30 F.4th at 887–89 (affirming dismissal of second action on improper claim-splitting grounds).

*Finally*, the claims arise from the same transactional nucleus of facts in both cases: the labeling of PediaSure and its sale to California consumers. *Single Chip Systems Corp.*, 495 F. Supp. 2d at 1059 ("The doctrine of claim splitting bars a party from subsequent litigation where the 'same controversy' exists.") (citing *Nakash v. Super. Ct.*, 196 Cal. App. 3d 59, 68 (1987)). Causes of action need not be identical to originate from the same transactional nucleus of facts. *See Sargent v. MaineHealth*, No. 2:22-cv-00006-JAW, 2022 WL 2132272, at *11 (D. Me. June 14, 2022) (applying claim-splitting doctrine where both cases centered on same employment relationship and alleged improper termination despite claims in each case being based on different legal grounds). Here, both the *VanCleave* case and the current action are based on purchases of PediaSure in California and alleged misstatements on the product's label. *VanCleave* FAC ¶ 5; Compl. ¶ 14. The two complaints even allege that several of the same statements on PediaSure's label are misleading. *VanCleave* FAC ¶ 5; Compl. ¶ 19. And for the same reasons. *VanCleave* FAC ¶ 16 (alleging that Abbott's "health and wellness" labeling statements on PediaSure products are misleading given the product's added sugar content); Compl. ¶ 110 (describing how these statements on PediaSure allegedly deceived reasonable consumers because the product contains added sugar). It is undeniable that both *VanCleave* and the present case originate from the same transactional nucleus of facts.

1    Courts in this Circuit regularly apply the claim-splitting doctrine in similar circumstances.

2    In *Bojorquez*, for example, the court dismissed the plaintiff's claims on claim-splitting grounds

3    where the plaintiff was a member of a certified class in an earlier-filed lawsuit against the same

4    defendants and both cases involved similar factual allegations involving employment practices.

5    193 F. Supp. 3d at 1121–22, 1124, 1127.  In its analysis, the court confirmed that being a member

6    of a certified class in a pending class action qualifies a plaintiff as a "party" for purposes of the

7    claim-splitting analysis.  *Id.* at 1124–25.  Likewise, in *Greene v. H & R Block Eastern Enterprises,*

8    *Inc.*, the court dismissed a later-filed class action under the claim-splitting doctrine plaintiffs in the

9    later-filed action had not opted out of the certified class in the first-filed action.  727 F. Supp. 2d

10   1363, 1367–68 (S.D. Fla. 2010).

11    Dismissal is the appropriate remedy here too, because, as in *Bojorquez* and *Greene*, the

12   Plaintiffs here are class members in a prior filed lawsuit against the same defendant based on the

13   same transactional facts (their purchases of PediaSure in California since 2021).  Put simply,

14   Plaintiffs could have opted out of the *VanCleave* classes but did not, they lost their PediaSure

15   damages claims last week, and they should not have a second bite at the apple.  At a minimum,

16   though, the Court should stay Plaintiffs' PediaSure claims pending a final, non-appealable

17   judgment in *VanCleave*.

18   **C.    Plaintiffs' claims should be dismissed for failure to state a claim.**

19    Beyond their procedural shortcomings, Plaintiffs' claims fail for failure to state a claim.

20   Plaintiffs assert three liability theories:

21   **1.    Added Sugar Theory:**  Plaintiffs allege that several statements on both products'

22     labels are false or misleading because the products purportedly contain too much

23     added sugar.  *See* Compl. ¶¶ 44–50.  As for Similac Go & Grow, Plaintiffs

24     challenge the following labeling statements under this theory: "Toddler Drink,"

25     "360 Total Care," and "12-36 months."  *Id.* ¶¶ 16, 42.  As for PediaSure, Plaintiffs

26     challenge the following labeling statements under this theory: "Complete, Balanced

27     Nutrition" and "Balanced Nutrition to Help Fill Gaps."  *Id.*

28

13

2.      **DHA Theory:**  Plaintiffs allege that several statements on both products' labels are false or misleading because the ingredient DHA purportedly "does not support brain development." *Id.* ¶¶ 53–58.  Specifically, those statements are "DHA" and "Brain Development" on Similac Go & Grow (*id.* ¶¶ 16, 42) and "DHA Omega-3" on PediaSure (*id.* ¶¶ 19, 42).

3.      **"#1 Pediatrician Recommended Brand" Theory:**  Only as to PediaSure, Plaintiffs challenge that the labeling statement "#1 Pediatrician Recommended Brand" is false or misleading because a handful of publications authored by a handful of doctors have questioned "toddler formulas." *Id.* ¶¶ 51–52.

All three theories fail because Plaintiffs have failed to allege facts sufficient to satisfy Rule 12(b)(6), much less Rule 9(b).  In addition, Plaintiffs' claim for injunctive relief should be dismissed for the independent reason that Plaintiffs lack standing.

## 1.      Plaintiffs have not satisfied Rules 12(b)(6) or 9(b).

Because all of Plaintiffs' claims sound in fraud, the Complaint must satisfy both the general plausibility standard under Rule 12(b)(6) and the more demanding standard under Rule 9(b) requiring that the Complaint "state with particularity the circumstances constituting fraud."[5]  The Rule 9(b) standard requires the Complaint to plead facts setting out not only "*what* is false or misleading about the purportedly fraudulent statement" but also "*why* it is false." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (emphasis added); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  Further, it is not enough that Plaintiffs allege that they were misled, because at the pleading stage the Court applies an "objective" standard that demands more than "a mere possibility" that the challenged labeling statements "might conceivably be misunderstood by [a] few consumers viewing it in an unreasonable manner." *Becerra*, 945 F.3d at 1228 (citation omitted).  Rather, Plaintiffs must

---

[5] Even if fraud is not an element of a particular claim, when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as a basis of [his] claim[s]," Rule 9(b) applies. *Kearns*, 567 F.3d at 1125 (affirming application of Rule 9(b) to claims under California consumer protection statutes that "sound in fraud").  Here, all of Plaintiffs' claims—including their breach of warranty claims—rest on the same alleged "unified course of fraudulent conduct" such that Rule 9(b) applies to all claims.

14

1    plausibly allege that a "significant portion" of reasonable consumers could be misled.  *See Lavie*

2    *v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  When applying this standard, courts

3    must account for the "contextual inferences regarding the product" that a reasonable consumer

4    would make.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

5            None of the three liability theories meet these standards.

6                        a.        **Plaintiffs' added sugar theory.**

7            Plaintiffs' added sugar theory should be dismissed for two independent reasons: (1) it fails

8    under a recent Ninth Circuit case, *Davidson v. Sprout Foods, Inc.*; and (2) Plaintiffs have failed to

9    plead that the products' added sugar content renders any of the challenged statements misleading

10   to reasonable consumers.

11           ***First***, Plaintiffs' added sugar theory is indistinguishable from *Davidson v. Sprout Foods,*

12   *Inc.*, 106 F.4th 842 (9th Cir. 2024).  There, the Ninth Circuit affirmed dismissal of a strikingly

13   similar added sugar theory.  *Id.* at 853.  Plaintiffs in *Sprout Foods* likewise alleged that certain

14   statements on the label of defendant's pouches of pureed food for children were misleading and

15   that the pouches were "harmful" because of added sugar, and that some commentators have

16   doubted whether the pouches are necessary or beneficial to children's nutritional health.  *Id.* at

17   847.  In rejecting this theory, the Ninth Circuit held that such allegations were insufficient under

18   Rule 9(b).  *Id.* at 853.  The Ninth Circuit reasoned that "Plaintiffs' allegations regarding harm are

19   largely unspecific to Sprout's products" and were "largely speculative."  *Id.*  As for the pouches'

20   sugar content, the Ninth Circuit found that allegations insufficient because they "lack[ed] context"

21   and because plaintiffs did "not explain at what level sugars become harmful or why the levels of

22   sugar in these products, in particular, could cause harm."  *Id.*

23           So too here.  Plaintiffs' allegations of harm because of the products' added sugar content

24   are entirely unspecific to Similac Go & Grow and PediaSure products.  *See* Compl. ¶¶ 44–50.

25   Similarly unconnected to the products at issue are Plaintiffs' generalized allegations of harm

26   regarding added sugar generically.  *Id.*  And while Plaintiffs purport to list the amount of added

27   sugar in each at-issue product, as in *Sprout Foods* they do not even attempt say at what amount

28   the added sugar content becomes harmful, with one exception: they say that for children under 2,

15

1    health authorities "recommend" no added sugar.  *Id.* ¶¶ 44, 49.  This allegation, though, cannot

2    save Plaintiffs from dismissal under *Sprout Foods*.  For one, PediaSure is intended for children

3    aged 2–13 (except under a doctor's guidance), so Plaintiffs' allegations of added sugar

4    recommendations for children under 2 is irrelevant to Plaintiffs' PediaSure claims.  As for Similac

5    Go & Grow, that some health authorities ***generally*** "recommend" avoiding added sugar hardly

6    means that the added sugar ***in Similac Go & Grow*** is harmful for children.  *Id.*  Just as in *Sprout*

7    *Foods*, Plaintiffs have failed to allege facts supporting "why the levels of sugar in these products,

8    ***in particular***, could cause harm."  106 F.4th at 853 (emphasis added).

9        Thus, under *Sprout Foods* alone, the Court should dismiss Plaintiffs' added sugar theory.

10       ***Second***, and independently, this is a false labeling case.  Even if the amount of added sugar

11   in Similac Go & Grow or PediaSure were too high, that would not be enough to state a claim.

12   Rather, Plaintiffs must adequately allege that the amount of added sugar in the products somehow

13   rendered the challenged labeling statements false or misleading.  Here, they have not and cannot.

14       As for the three Similac Go & Grow statements challenged under this theory—"Toddler

15   Drink," "360 Total Care," and "12-36 months"—none so much as mentions added sugar.  Nowhere

16   in Plaintiffs' Complaint do they even attempt to connect these statements to added sugar.  *E.g.*,

17   Compl. ¶¶ 44–50.  Plaintiffs' conclusory allegations that they are nonetheless false or misleading

18   are insufficient.  The same goes for the two PediaSure statements challenged under this theory:

19   "Complete, Balanced Nutrition" and "Balanced Nutrition to Help Fill Gaps."  Neither mentions

20   sugar, and Plaintiffs have not alleged even in conclusory terms how these statements are rendered

21   false or misleading by PediaSure's added sugar content.  *Id.*

22       Nor have Plaintiffs explained why reasonable consumers would be misled by these

23   statements given the express disclosure of added sugar in the federally-mandated Nutrition Facts

24   Panel on every product label.  *See* Ex. A, Ex. B.  Indeed, any reasonable consumer interested in

25   Similac Go & Grow's or PediaSure's sugar content could "review the product's ingredient list to

26   dispel or ameliorate any confusion that might be raised by" the challenged statements.  *Cheslow*

27   *v. Ghirardelli Chocolate Co.*, 497 F. Supp. 3d 540, 546 (N.D. Cal. 2020); *McGinity v. Procter &*

28

16

1   *Gamble Co.*, 69 F.4th 1093, 1098–99 (9th Cir. 2023). Nothing in Plaintiff's Complaint is sufficient

2   to override that commonsense principle.

3                          **b.    Plaintiffs' DHA theory.**

4       Plaintiffs' second liability theory is that "DHA does not support brain development."

5   Compl. ¶¶ 53–58. Again, though, this is a false labeling case. Accordingly, Plaintiffs must

6   adequately allege that the challenged labeling statements are rendered false or misleading to

7   reasonable consumers because "DHA does not support brain development." They cannot.

8       As for Similac Go & Grow, there are two challenged statements pertinent to Plaintiffs'

9   DHA theory. *First*, Plaintiffs challenge the statement "DHA," which appears on the bottom half

10  of the front of the label. Compl. ¶ 17. There is nothing remotely false or misleading about this

11  statement. Simply put, Plaintiffs do not allege (nor could they) that Similac Go & Grow does not

12  contain DHA, which is all that this statement implies. *Second*, Plaintiffs challenge the statement

13  "Brain Development," which appears on the top right of the front of the label. *Id*. Plaintiffs'

14  theory seems to be that this reference to "Brain Development" has something to do with DHA.

15  Compl. ¶ 16. But no reasonable consumer could conclude as much. The words "Brain

16  Development" and "DHA" are separated by more than half the label, including the product name,

17  "by Similac," "toddler drink," and several differently colored bars, among other visual elements.

18  Compl. ¶ 17. No reasonable consumer would surmise that the reference to "Brain Development"

19  is connected to "DHA."

20      As for PediaSure, there is only one challenged statement pertinent to Plaintiffs' DHA

21  liability theory: "DHA Omega-3." But Plaintiffs admit that DHA is "an omega-3 fatty acid," *see*

22  Compl. ¶ 54, and they do not contest that PediaSure contains DHA, which is all that this statement

23  implies. And nowhere on the PediaSure label do the words "brain development" appear—even

24  unconnected to the words "DHA Omega-3." Ex. B. Plaintiffs' allegations that PediaSure labeling

25  is false or misleading on this front are thus even more lacking than are their parallel allegations

26  concerning Similac Go & Grow.

27      In sum, it matters not whether DHA fails to "support brain development," as Plaintiffs

28  claim, because Plaintiffs have not adequately alleged that reasonable consumers would conclude

                                      17

1    that either product's labels so much as imply otherwise.  Plaintiffs have therefore failed to

2    adequately allege how or why these statements are false or misleading, as Rule 9(b) requires.[6]

3                    **c.    Plaintiffs' "#1 Pediatrician Recommended Brand" theory.**

4            Plaintiffs' final liability theory applies only to PediaSure.  Specifically, Plaintiffs posit that

5    the statement "#1 Pediatrician Recommended Brand" is misleading.  *See* Compl. ¶¶ 51-52.

6    Plaintiffs' sole basis for this allegation is that two articles have reportedly advised against "toddler

7    formula."  *See* Ex. C, Older Infant-Young Child "Formula"; Ex. D, Decreasing Community

8    Toddler Formula Use.

9            But both of those articles are about "toddler formulas"—which PediaSure is not.  For

10   example, the article titled *Older Infant-Young Child "Formulas"* discusses only "liquid nutritional

11   products referred to as 'formulas' [that] have been developed for the older infant and toddler of

12   separate age ranges and increasingly promoted by manufacturers in North America and elsewhere,

13   with different identities including 'transition formulas,' 'follow-on' or 'follow-up formulas,' or

14   'weaning formulas,' typically for children 6 to 24 months of age, and 'toddler milks or formulas,'

15   _____

16   [6] In passing, Plaintiffs allege that the Similac Go & Grow challenged statements "DHA" and
     "Brain Development" are impermissible "nutrient content" claims under FDA regulations barring
17   such claims on products intended for children under 2.  *See* Compl. ¶¶ 56–58.  But neither
     statement qualifies under either subsection of the FDA regulations in effect during the relevant
18   timeframe defining "nutrient content" claims: 21 C.F.R. § 101.13(b)(2)(i)–(ii).  As for "DHA,"
     subsection (i) applies to statements that "[d]escribe[] the food or an ingredient therein in a manner
19   that suggests that a nutrient is absent or present *in a certain amount* (e.g., 'high in oat bran')."
     (emphasis added)  But this challenged statement does not refer to any "certain amount" of DHA
20   in Similac Go & Grow.  Put differently, the reference to "DHA" on Similac Go & Grow is unlike
     the example given in subsection (i)—"high in oat bran"—because it simply mentions the
21   ingredient without characterizing it as "high" or otherwise mentioning that it is absent or present
     in a "certain amount."  Subsection (ii) is likewise inapplicable to the statement "DHA" because
22   there is no suggestion that either product "because of its nutrient content, may be useful in
     maintaining healthy dietary practices."  *Id*. § 101.13(b)(2)(ii).  Rather, the labels just imply that
23   the products contain DHA.  The example given in subsection (ii)—"healthy, contains 3 grams (g)
     of fat"—is also instructive.  In contrast to the subsection (ii) example, the statement "DHA" lacks
24   a phrase such as "healthy" or some other such suggestion that the nutrient "may be useful in
     maintaining healthy dietary practices."  *Id*.  As for the other pertinent challenged statement, "Brain
25   Development," it does not qualify under either subsection (i) or (ii) because it does not even refer
     to any "nutrient," which it must to qualify as a nutrient content claim.  Because neither challenged
26   statement qualifies as a "nutrient content" claim under the FDA regulations in effect at the time,
     they are not impermissible even on products intended for children under 2.
27

28

                                                    18

'growing-up milks,' or 'young child milks' generally for children 12 to 36 months of age." *See* Ex. C at 1–2.  That is not PediaSure, which is a nutritional supplement primarily designed for children aged 2–13.  *See* Ex. B.  In contrast, the cited articles are about drinks closer to Similac Go & Grow.  But that Similac Go & Grow is arguably among the "toddler formulas" referenced by these articles is beside the point, because only PediaSure includes the challenged statement.  Compl. ¶¶ 16, 19.

Regardless, Plaintiffs' suggestion that even on-topic articles could provide adequate support for an allegation that PediaSure is not the "#1 Pediatrician Recommended Brand" falls far short.  Whether or not some pediatricians or even health organizations have questioned a class of products does not mean that one of those products is not the most recommended brand among them.  Plaintiffs' suggestion otherwise is a *non-sequitur*.

Thus, Plaintiffs have failed to adequately allege how or why this statement is false or misleading, as Rule 9(b) requires.

### 2. Plaintiffs lack standing to pursue injunctive relief.

Plaintiffs' request for injunctive relief fails for two additional reasons, each of which on its own merits dismissal.

*First*, Plaintiffs lack standing to pursue injunctive relief under Federal Rule of Civil Procedure 12(b)(1) because they do not plausibly allege any "real or immediate threat that [they] will be wronged again" in a similar way.  *Urban v. Tesla, Inc.*, 698 F. Supp. 3d 1124, 1134 (N.D. Cal. 2023) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)).  Purely past wrongs alone are insufficient to establish the injury-in-fact required for Article III standing.  *See Kimberly-Clark Corp.*, 889 F.3d at 967 (citing *Lyons*, 461 U.S. at 102–03).  Rather, the Ninth Circuit has identified two potential future harms that could justify injunctions in product labeling cases: (1) the plaintiff's inability to rely on the product's labeling in the future, preventing them from purchasing the product even if desired; and (2) the likelihood that consumers will mistakenly believe the product has been improved, leading to future purchases and repeated injury.  *See id.* at 969–70.

1    Plaintiffs fail to plausibly allege either scenario.  Although Plaintiffs express a desire to

2  repurchase the products in conclusory terms, Compl. ¶¶ 29–30, they do not allege that they have

3  children who are still young enough to use the products in the future.  The Court should not give

4  Plaintiffs the benefit of the doubt on this point.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

5  998 (9th Cir. 2010) (courts are not obligated to accept as true any merely conclusory allegations

6  or those that are based on unreasonable inferences).   Unlike broader-use consumer products,

7  plausibly alleging risk of future harm associated with purchases of age-specific products, such as

8  those at issue, requires alleging that the Plaintiffs have an age-appropriate consumer in their

9  household.  *See In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 707 F. Supp. 3d

10  103, 140 (D. Mass. 2023) (rejecting plaintiffs' hypothetical standing contention premised on

11  unborn children or grandchildren); *see also In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*

12  *(No. II),* No. 20-15742, 2021 WL 3878654, at *1–2 (9th Cir. Aug. 31, 2021) (reversing district

13  court's conclusion that consumer plaintiffs had standing to seek injunction because standing for

14  injunctive relief cannot be premised on "abstract interest in compliance with labeling

15  requirements").

16    In any case, the Complaint demonstrates that Plaintiffs are aware of the supposed "truth"

17  about the products and thus do not need to rely on the labels' representations about the product

18  and instead can just simply check the products' nutrition label for ingredients.  *See Prescott v.*

19  *Abbott Lab'ys*,736 F. Supp. 3d 775, 786 (N.D. Cal. 2024) (plaintiffs lacked standing for injunctive

20  relief considering awareness of specific ingredients and alleged associated health risks in products,

21  negating "real and immediate threat of repeated injury").[7]  Plaintiffs do not suggest they face a risk

22  of future harm; rather, their allegations are based solely on specific ingredients in the Defendant's

23  products.   Plaintiffs are aware that these ingredients are present in Similac Grow & Go and

24  PediaSure, and the Complaint indicates that they are now informed of the alleged health risks

---

[7] Alleging this case as a class action does not solve Plaintiffs' standing problem.  The possibility that some members of the putative class might have standing is not considered because standing must be measured solely on the named plaintiffs.  *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1138 (N.D. Cal. 2017) (plaintiffs in a class action cannot rely on the potential future injury of unnamed class members to establish standing for injunctive relief).

20

1   associated with those ingredients. *See* Compl. ¶¶ 38–39.  Consequently, this is not a case where

2   plaintiffs must depend on the manufacturer's future representations about the product.  Instead,

3   they can simply review the ingredients list to determine whether Similac Grow & Go and

4   PediaSure contain added sugar and the other ingredients at issue.  Therefore, the plaintiffs have

5   not demonstrated any "real and immediate threat of repeated injury" that would necessitate an

6   injunction. *See Kimberly-Clark Corp*, 889 F.3d at 967 (citation omitted).  In short, Plaintiffs have

7   not plausibly alleged standing for injunctive relief under either available prong.

8         *Second*, and independently, Plaintiffs fail to plausibly allege facts showing the absence of

9   an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)

10  (affirming dismissal of plaintiff's claims for equitable relief under UCL and CLRA because

11  plaintiff failed to adequately allege a lack of legal remedy).  At the pleading stage, courts require

12  plaintiffs seeking equitable relief to allege facts describing why monetary damages will not fully

13  compensate them. *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC(GJSx),

14  2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("[C]ourts generally require plaintiffs seeking

15  equitable relief to allege some facts suggesting that damages are insufficient to make them

16  whole.") (collecting cases); *see also Sonner*, 971 F.3d at 844.  Here, the Complaint includes no

17  such facts.  To the contrary, Plaintiffs' allegations on this front are merely threadbare assertions

18  that damages are insufficient. *See* Compl. ¶ 69.  The Court should therefore dismiss Plaintiffs'

19  claim for injunctive relief on this basis as well.

20  **V.    CONCLUSION**

21        For these reasons, Abbott respectfully requests that the Court dismiss Plaintiffs'

22  Complaint.

23

24

25

26

27

28

1   Dated:  February 28, 2025                    Respectfully submitted,

2                                                LATHAM & WATKINS LLP
                                                    Melanie M. Blunschi
3                                                   William J. Trach
                                                    U. Gwyn Williams
4                                                   Nathan A. Sandals

5
                                                 By  */s/ William J. Trach*
6                                                    William J. Trach

7                                                Attorneys for Defendant
                                                 Abbott Laboratories
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22