1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
  Melanie M. Blunschi (Bar No. 234264)
    melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 391-0600

  William J. Trach (*pro hac vice*)
    william.trach@lw.com
  U. Gwyn Williams (*pro hac vice*)
    gwyn.williams@lw.com
  Nathan A. Sandals (*pro hac vice*)
    nathan.sandals@lw.com
200 Clarendon Street
Boston, MA 02116
Telephone:  (617) 948-6000

*Attorneys for Defendant*
*Abbott Laboratories*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAX ULRICH and RYAN SCHAVRIEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. 3:24-cv-09452-RFL<br><br>**DEFENDANT ABBOTT LABORATORIES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   August 19, 2025<br>Time:   10:00 AM<br>Courtroom:   15<br>Hon. Rita F. Lin |

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on August 19, 2025, at 10:00 A.M., or as soon thereafter as

4    the matter may be heard in the United States District Court for the Northern District of California,

5    Courtroom 15, Defendant Abbott Laboratories ("Abbott") will and hereby does move this Court

6    for an order in the above-captioned action dismissing Plaintiffs Max Ulrich's and Ryan

7    Schavrien's First Amended Class Action Complaint with prejudice, pursuant to Rules 12(b)(1) and

8    12(b)(6) of the Federal Rules of Civil Procedure, on the basis that the matter is subject to dismissal

9    under the first-to-file rule and the prohibition on claim-splitting, and for failure to state a claim

10   upon which relief can be granted as well as for lack of standing for injunctive relief. This Motion

11   is based on this Notice, the supporting Memorandum of Points and Authorities, the complete files

12   and records in this action, and any additional material and arguments as may be considered in

13   connection with the hearing.

14        Through this Motion, Abbott respectfully requests that the First Amended Complaint be

15   dismissed with prejudice.

16

17   Dated: May 27, 2025                          Respectfully submitted,

18                                                LATHAM & WATKINS LLP
                                                  Melanie M. Blunschi
19                                                William J. Trach
                                                  U. Gwyn Williams
20                                                Nathan A. Sandals

21
                                                 By  */s/ William J. Trach*
22                                                   William J. Trach

23                                               Attorneys for Defendant
                                                 Abbott Laboratories
24

25

26

27

28

1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    The products......................................................................................... 2

    B.    Plaintiffs' claims. ................................................................................ 3

    C.    Overlapping, first-filed cases. ............................................................ 4

III.  STANDARD OF REVIEW ................................................................................ 6

IV.   ARGUMENT ..................................................................................................... 7

    A.    Plaintiffs' Similac Go & Grow claims should be dismissed under
        the first-to-file rule. ............................................................................ 7

    B.    Plaintiffs' PediaSure claims should be dismissed because they
        constitute impermissible claim-splitting .......................................... 11

    C.    Plaintiffs' claims should be dismissed for failure to state a claim...................... 14

        1.    Plaintiffs have not satisfied Rules 12(b)(6) or 9(b). .............................. 15

                a.    Plaintiffs' added sugar theory. ....................................... 16

                b.    Plaintiffs' "#1 Pediatrician Recommended Brand"
                      theory. ........................................................................... 17

                c.    Plaintiffs' DHA theory................................................... 18

        2.    Plaintiffs lack standing to pursue injunctive relief. ................................ 20

                a.    Plaintiff's fail to allege a real threat of future harm..................... 20

                b.    Plaintiffs have an adequate remedy at law................................. 22

V.    CONCLUSION.................................................................................................. 23

1
2
3

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................6

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
   945 F.3d 1225 (9th Cir. 2019) ...............................................................................15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................6

*Bojorquez v. Abercrombie & Fitch, Co.,*
   193 F. Supp. 3d 1117 (C.D. Cal. 2016) ...........................................................11, 13

*Castro et al. v. Abbott Laboratories,*
   1:25-cv-00377 (N.D. Ill.) ..........................................................................................7

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ..................................................................................6

*Cheslow v. Ghirardelli Chocolate Co.,*
   497 F. Supp. 3d 540 (N.D. Cal. 2020) ...................................................................17

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,*
   710 F.3d 946 (9th Cir. 2013) ....................................................................................6

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ...................................................................................................21

*Cook v. C.R. Eng., Inc.,*
   No. CV 12-3515-GW CWX, 2012 WL 2373258 (C.D. Cal. June 21, 2012) .........11

*Costantini v. Trans World Airlines,*
   681 F.2d 1199 (9th Cir.1982) ...........................................................................11, 12

*Cunha v. IntelliCheck, LLC,*
   254 F. Supp. 3d 1124 (N.D. Cal. 2017) .................................................................22

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ..................................................................................21

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) .......................................................................15, 21, 22

*Davidson v. Sprout Foods, Inc.,*
   106 F.4th 842 (9th Cir. 2024) .............................................................................16, 17

ii

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV 20-00769-CJC(GJSx), 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .......................23

*Greene v. H & R Block Eastern Enterprises, Inc.*,
   727 F. Supp. 2d 1363 (S.D. Fla. 2010) ................................................................13, 14

*Gutierrez et. al v. Abbott Labs.*,
   2:24-CV-02427-TLN-SCR ................................................................................4

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
   No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) ............................21

*In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   707 F. Supp. 3d 103 (D. Mass. 2023) ..................................................21

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..............................................................6, 15

*Koehler v. Pepperidge Farm, Inc.*,
   No.: 13–cv–02644–YGR, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) ..............7

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) ....................................................7, 8, 9

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .................................................................15

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ...............................................................2

*Manier v. L'Oreal USA, Inc.*,
   No. 2:16-CV-06886-ODW-KS, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017)...........................7

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................9

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ..........................................................17

*Mendoza v. Amalgamated Transit Union Int'l*,
   30 F.4th 879 (9th Cir. 2022) ........................................................6, 13

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ...........................................................15

*Nakash v. Super. Ct.*,
   196 Cal. App. 3d 59 (1987) ...........................................................13

iii

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ...................................................................................8, 10

*Pedro v. Millennium Prod., Inc.*,
   2016 WL 3029681 (N.D. Cal. May 27, 2016) .....................................................8, 9

*Prescott v. Abbott Labs.*,
   736 F. Supp. 3d 775 (N.D. Cal. 2024) ...................................................................22

*Ruff v. Del Monte Corp.*,
   No. C 12-05251 JSW, 2013 WL 1435230 (N.D. Cal. Apr. 9, 2013)........................8

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ...............................................................................6

*Sargent v. MaineHealth*,
   No. 2:22-cv-00006-JAW, 2022 WL 2132272 (D. Me. June 14, 2022) .................13

*Schwartz v. Frito-Lay N. Am.*,
   No. C-12-02740 EDL, 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) .................10

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
   495 F. Supp. 2d 1052 (S.D. Cal. 2007)............................................................12, 13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...........................................................................22, 23

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)................................................................................................7

*United States. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   971 F.2d 244 (9th Cir. 1992) .................................................................................4

*Urban v. Tesla, Inc.*,
   698 F. Supp. 3d 1124 (N.D. Cal. 2023) ................................................................21

*VanCleave et. al v. Abbott Labs.*,
   Case No. 19CV345045 .............................................................................................5

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...............................................................7, 8

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................................7

*Young v. L'Oreal USA, Inc.*,
   526 F. Supp. 3d 700 (N.D. Cal. 2021) ...................................................7, 8, 9, 10

*Zimmer v. Dometic Corp.*,
   2018 WL 1135634 (C.D. Cal. Feb. 22, 2018)..........................................................9

iv

1

## REGULATIONS

2

21 C.F.R.

3    § 101.13(b)(2)(i) ................................................................................................20
    § 101.13(b)(2)(ii) ...............................................................................................20

4

## OTHER AUTHORITIES

5

https://www.pediasureclassactionlawsuit.com/Home/FAQ (last visited Feb. 25,

6    2025; as of May 13, 2025, the website is no longer active).......................................5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.    INTRODUCTION**

3      This product labeling case involves two distinct Abbott products.  The first is Similac Go

4  & Grow, a toddler drink intended for children aged 1–3.  The second is PediaSure, a nutritional

5  supplement primarily intended for children aged 2–13.

6      Although Plaintiffs amended their complaint nearly two months after Abbott filed its

7  motion to dismiss the original complaint, that superficial amendment did nothing to alter the

8  substance of the allegations or support permitting any of Plaintiffs' claims to proceed past the

9  pleading stage.  Plaintiffs still allege that both Go & Grow's and PediaSure's labels include certain

10 statements that are false or misleading.  On the substance, Plaintiffs are (still) wrong, as explained

11 below.  But the threshold problems for Plaintiffs remain that their claims are subject to dismissal

12 because they are copycat claims being heard elsewhere, some of which claims have already been

13 decided *against* Plaintiffs.  As for Similac Go & Grow, Plaintiffs' claims and their proposed class

14 overlap with those in an earlier-filed action pending in the Eastern District of California, *Gutierrez*

15 *v. Abbott Laboratories*.  Under Ninth Circuit precedent recognizing the importance of preserving

16 judicial resources and avoiding inconsistent judgments, this later-filed action should be dismissed

17 under the first-to-file rule.  As for PediaSure, both Plaintiffs are part of certified classes of

18 California PediaSure purchasers whose overlapping claims are being adjudicated in a California

19 state court action, *VanCleave v. Abbott Laboratories*.  Indeed, in February, a jury in this district

20 returned a complete defense verdict for Abbott on those claims, finding that PediaSure's labeling

21 is not false or misleading.  Plaintiffs' amendment minimally tweaked the ***words*** on the PediaSure

22 label that they challenge, but they did nothing to change their theory that PediaSure's added sugar

23 content makes otherwise true statements on the product's label false and misleading.  The problem

24 for Plaintiffs is that the very same theory was already defeated in *VanCleave*.  Plaintiffs cannot

25 evade the bar on claim-splitting simply by focusing on a different word on the label than that

26 challenged in a prior case.  At core, Plaintiffs' PediaSure claims remain the same as in the original

27 complaint:  Abbott's PediaSure label is false because it suggests the product has "Balanced

28

Nutrition" despite containing added sugar. Under the well-established doctrine precluding claim-splitting, Plaintiffs are barred from taking a second bite of the apple here.

Were those procedural defects not enough, Plaintiffs' amendment did not cure any of the substantive deficiencies with their claims. *First*, none of Plaintiffs' three liability theories is adequately pleaded under Federal Rule of Civil Procedure 12(b)(6), much less under Rule 9(b). *Second*, and independently, Plaintiffs' injunctive relief claims fail for lack of standing because Plaintiffs fail to adequately allege any real or immediate threat that they will be wronged again and, separately, because Plaintiffs have not plausibly alleged facts showing the absence of an adequate remedy at law.

Abbott therefore respectfully requests that the Court dismiss the Complaint.

## II.    BACKGROUND

### A.    The products.

Abbott is an Illinois-based healthcare company that manufactures, markets, and distributes a variety of medical devices, nutrition supplements, and other products. Compl. ¶ 32. Among those is Similac Go & Grow, a milk-based toddler drink intended for children 12–36 months old. Similac Go & Grow's ingredients and benefits are expressly set out on its label. *See* Ex. A (Go & Grow Labels).[1] For example, Similac Go & Grow's label states that it contains "DHA," "Lutein," and "Vitamin E"—because it does. *Id.* The label also states that it contains, via two servings, "28 Important Nutrients for Growth and Development"—again, because it does. *Id.* The label also includes the federally mandated Nutrition Facts Panel, which sets out precisely what Similac Go & Grow contains and how much, in percentage terms, each nutrient contributes to a daily diet. *Id.* For example, the Nutrition Facts Panel on Similac Go & Grow 360 Total Care says exactly how many grams of total sugars the product contains (7 grams), how many of those grams are from added sugar (4 grams), and how much that contributes to a daily diet (16% per serving). *Id.*

---

[1] The Court may consider the products' labels attached as exhibits hereto because the Complaint includes portions thereof, *see* Compl. ¶¶ 18, 21, such that the full labels are incorporated by reference. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

1    Also among Abbott's products is PediaSure, a nutrition supplement primarily intended for

2    children over two.  Compl. ¶ 20; Ex. B (PediaSure Labels).  The base product, PediaSure Grow &

3    Gain, is primarily designed to support caloric needs for children behind in growth and to help fill

4    nutritional gaps in kids' diets.  *See* Ex. B.  PediaSure Grow & Gain contains both macronutrients

5    (protein, fat, and carbohydrates) and micronutrients (vitamins and minerals).  *Id.*  In the latter

6    category, PediaSure Grow & Gain contains 27 vitamins and minerals.  *Id.*  Accordingly, PediaSure

7    Grow & Gain's label states that it is "Complete, Balanced Nutrition" (because it is), that it contains

8    "DHA" (because it does), and that it is the "#1 Pediatrician Recommended Brand" (because survey

9    evidence shows as much).  *Id.*  And, just like Similac Go & Grow products, all PediaSure products

10   also include the Nutrition Facts Panel (including the product's added sugar of up to twelve grams

11   per serving) on every single label.  Compl. ¶ 46.

12       **B.      Plaintiffs' claims.**

13       Plaintiffs Max Ulrich and Ryan Schavrien are California residents who purport to sue on

14   behalf of a putative nationwide class and a California subclass of Similac Go & Grow and

15   PediaSure purchasers.  Compl. ¶¶ 30–31.  Plaintiff Ulrich claims that he purchased Similac Go &

16   Grow between mid-2021 and mid-2022 and that he purchased PediaSure in early 2023.  *Id.* ¶ 30.

17   Plaintiff Schavrien alleges that he purchased PediaSure between 2016 and April 2024.  *Id.* ¶ 31.

18   Schavrien does not allege that he ever purchased Similac Go & Grow.  *See generally id.*

19       Across the two products, Plaintiffs challenge labeling statements under three liability

20   theories.  *Id.* ¶ 22.[2]  The first liability theory attacks certain labeling statements on both products

21   that are allegedly false or misleading in light of the products' added sugar content.  *Id.*  The second

22   liability theory disputes the statement "#1 Pediatrician Recommended Brand," which appears only

23

24   _____

25   [2] The Complaint also references statements that allegedly appeared on two Abbott websites, www.pediasure.com and www.similac.com.  Compl. ¶ 44.  But Plaintiffs do not include those

26   statements as part of their definition of "Challenged Representations."  *Id.* ¶ 43.  Further, there is no allegation that Plaintiffs so much as saw, let alone relied upon, on any of the referenced website

27   statements.  *See generally Id.*  Nor do Plaintiffs so much as allege that these website statements are false or misleading.  *Id.*  Rather, Plaintiffs include these not as challenged statements

28   themselves but rather merely in an attempt to "demonstrate[e] the company's intent and knowledge that such claims are material to consumers."  *Id.* ¶ 44.

on PediaSure products. *Id.* The third liability theory challenges statements on both products involving the ingredient docosahexaenoic acid ("DHA"), an omega-3 fatty acid. *Id.* Specifically:

| Liability Theory | Similac Go & Grow Challenged Labeling Statements | PediaSure Challenged Labeling Statements |
|---|---|---|
| **Added Sugar Theory** | • "Toddler Drink" (¶¶ 17, 43)<br>• "360 Total Care" (¶¶ 17, 43)<br>• "12-36 months" (¶¶ 17, 43) | • "Balanced Nutrition" (¶¶ 24, 48) |
| **"#1 Pediatrician Recommended Brand" Theory** | None | • "#1 Pediatrician Recommended Brand" (¶¶ 20, 43) |
| **DHA Theory** | • "DHA" (¶¶ 17, 43)<br>• "Brain Development" (¶¶ 17, 43) | • "DHA Omega-3" (¶¶ 20, 43) |

Both Plaintiffs allege that they overpaid for the products because of these allegedly false or misleading labeling statements. *Id.* ¶¶ 30–31. Plaintiffs assert claims under a trio of California statutes: the False Advertising Law ("FAL"), the Consumer Legal Remedies Act ("CLRA"), and the Unfair Competition Law ("UCL"). *Id.* ¶¶ 98, 114, 138. They also assert warranty and unjust enrichment claims. *Id.* ¶¶ 147–149; 157. Plaintiffs seek monetary and injunctive relief. *Id.* ¶ 159.

### C.     Overlapping, first-filed cases.

This is not the only or even the first case with respect to either product's labeling asserting claims brought on behalf of California purchasers.

*Gutierrez* - **Similac Go & Grow:** In September 2024, Plaintiff Alana Gutierrez filed a putative class action regarding the labeling of Similac Go & Grow in the Eastern District of California. *See Gutierrez et. al v. Abbott Laboratories*, 2:24-CV-02427-TLN-SCR. The plaintiff in *Gutierrez* alleges that the same statements that Plaintiffs challenge—plus two more statements—on Similac Go & Grow labels are misleading, as here. *Gutierrez* Compl. ¶ 37.[3] Among those challenged statements are references to "DHA" and "Brain Development"—as here. *Id.* Among the liability theories in *Gutierrez* is that Similac Go & Grow contains too much added

---

[3] Courts may take judicial notice of pleadings in similar cases because such documents are part of the public record and have a direct relation to the matters at issue. *See United States. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

1    sugar—as here.  *Id.* ¶ 51.  The plaintiff in *Gutierrez* asserts claims under the CLRA, UCL, and

2    FAL, as well as a claim for unjust enrichment—as here.  *Id.* ¶¶ 98, 135.  And the plaintiff in

3    *Gutierrez* purports to bring suit on behalf of a putative class of California consumers—again, as

4    here.  *Id.* ¶¶ 71–72.  Abbott's motion to dismiss the *Gutierrez* Complaint is fully briefed and

5    pending a ruling.

6        ***VanCleave* - PediaSure:**  In May 2019, Plaintiff Elizabeth VanCleave (later joined by

7    Plaintiff Katherine Hassan) filed a class action regarding the labeling of PediaSure in California

8    state court in Santa Clara County.  *See VanCleave et. al v. Abbott Laboratories*, Case No.

9    19CV345045.  Plaintiffs there allege that certain statements on PediaSure labels are misleading—

10   as here.  *See VanCleave* First Amended Complaint ("FAC") ¶ 5  Among those challenged

11   statements are those related to "Balanced Nutrition" as here.  Compl. ¶¶ 12, 24, 48.  And, while it

12   was dismissed via motion practice, those plaintiffs previously alleged claims based on the labeling

13   statement "#1 Pediatrician Recommended Brand"—as here.  *See VanCleave*, Demurrer and

14   Motion to Strike Opinion and Order at 7, 14 (Dec. 23, 2019).  The liability theory in *VanCleave* is

15   that PediaSure contains too much added sugar—as here.  *VanCleave* FAC ¶ 136.  Plaintiffs in

16   *VanCleave* assert claims under the CLRA, UCL, and FAL, as well as warranty claims and an unjust

17   enrichment claim—as here.  *Id.* ¶ 18.  And not only do plaintiffs in *VanCleave* purport to represent

18   classes of California PediaSure purchasers—again, as here—but the court in *VanCleave* certified

19   several such classes.  *See VanCleave*, Class Cert. Order at 7–9 (Apr. 5, 2024).  To the extent they

20   purchased PediaSure where and when they say they did, Plaintiffs Schavrien and Ulrich, both

21   California residents, are clearly members of one or more of those certified classes.  *See* Compl.

22   ¶¶ 30–31.  Yet neither Plaintiff Schavrien nor Plaintiff Ulrich opted out of the *VanCleave* certified

23   classes.  *See generally* Compl. (nowhere alleging that either Plaintiff here opted out).[4]

24       In January and February 2025, the *VanCleave* case was tried to a California jury.  *See*

25   Docket, *VanCleave,* Case No. 19CV345045.  The jury (comprised of jurors from this District)

26

27   _____

     [4] The deadline for class members to opt out of the certified classes in *VanCleave* was September

28   3, 2024.  *See* https://www.pediasureclassactionlawsuit.com/Home/FAQ (last visited Feb. 25,
     2025; as of May 13, 2025, the website is no longer active).

5

1    returned a full defense verdict in Abbott's favor, wholly rejecting the certified classes' claims that

2    PediaSure's labeling is false or misleading.  *See* Ex. C (*VanCleave*, Verdict Form (Feb. 21, 2025)).

3    Among other findings, the jury found that labeling statements about "Balanced Nutrition" were

4    true and that the product conformed to the label.  *Id.*  In so doing, the jury rejected the certified

5    classes' falsity theories, including that PediaSure has too much added sugar.

6    **III.    STANDARD OF REVIEW**

7          Under Federal Rule of Civil Procedure 12(b)(6), dismissal is required where the complaint

8    fails to state a cognizable legal theory or does not allege sufficient facts to support a cognizable

9    legal theory.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

10   To survive, a complaint "must contain sufficient factual matter" to "state a claim to relief that is

11   plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544, 570 (2007)).  Although courts generally must accept as true a complaint's

13   "well-pleaded facts," courts need not accept "legal conclusions" or "[t]hreadbare recitals of the

14   elements of a cause of action."  *Iqbal*, 556 U.S. at 678–79.  Under the claim-splitting doctrine,

15   cases are subject to 12(b)(6) dismissal where the standard is met, as explained below.  *See Mendoza*

16   *v. Amalgamated Transit Union Int'l,* 30 F.4th 879, 884 (9th Cir. 2022).

17         Because Plaintiffs' claims are grounded in fraud, they must also meet the heightened

18   pleading standard under Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567

19   F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud to state with particularity

20   the circumstances constituting that fraud.  To satisfy this standard, the "complaint must identify

21   the who, what, when, where, and how of the misconduct charged, as well as what is false or

22   misleading about the purportedly fraudulent statement, and why it is false."  *Salameh v. Tarsadia*

23   *Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotations omitted).

24         Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on

25   lack of subject matter jurisdiction, including for lack of standing.  *Chandler v. State Farm Mut.*

26   *Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).  To survive a Rule 12(b)(1) challenge, "the

27   plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]" under Article

28

III, Section 2 of the U.S. Constitution.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Finally, the first-to-file rule is an independent ground for dismissal that hinges on the multi-factor analysis described below.  *See Young v. L'Oreal USA, Inc*., 526 F. Supp. 3d 700, 704 (N.D. Cal. 2021).  In applying the first-to-file rule, courts "maximize economy, consistency, and comity." *Id.*  (citation and internal quotations omitted).

## IV.    ARGUMENT

### A.    Plaintiffs' Similac Go & Grow claims should be dismissed under the first-to-file rule.

The first-to-file rule is a well-recognized doctrine of federal comity pursuant to which federal district courts exercise discretion to decline jurisdiction over an action that involves similar parties and issues as an earlier-filed federal case.  *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc*., 787 F.3d 1237, 1239–40 (9th Cir. 2015).  The rule reduces burdens on the federal judiciary and prevents conflicting judgments.  *See Wallerstein v. Dole Fresh Vegetables, Inc.,* 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013).  Accordingly, courts should not "disregard[] lightly" the first-to-file rule.  *Koehler v. Pepperidge Farm, Inc.*, No.: 13–cv–02644–YGR, 2013 WL 4806895, at *2 (N.D. Cal. Sept. 9, 2013).

Courts in this Circuit consider three factors in considering motions brought under this rule: (1) the chronology of the actions, (2) the similarity of the parties, and (3) the similarity of the issues.  *Manier v. L'Oreal USA, Inc.*, No. 2:16-CV-06886-ODW-KS, 2017 WL 59066, at *2 (C.D. Cal. Jan. 4, 2017) (citation omitted); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (affirming district court's decision applying three-factor test).  Here, all three factors support dismissing Plaintiffs' Similac Go & Grow claims in light of the first-filed *Gutierrez* case.

**Chronology of the actions:**  *Gutierrez* was filed well ahead of this case, on September 5, 2024, three-plus months before Plaintiffs here filed suit.[5]  Compl. at 54.  This factor thus favors

---

[5] On January 14, 2025, another overlapping case was filed, *Castro et al. v. Abbott Laboratories*, 1:25-cv-00377 (N.D. Ill.), bringing claims premised on the same underlying allegations.  Abbott intends to seek dismissal of those claims, too.

1   dismissal. *See Pacesetter Sys.*, 678 F.2d at 95 (applying first-to-file rule to dismiss action filed

2   three days after first-filed case).

3       **Similarity of the parties:**  For this second factor to support dismissal, the parties need

4   only be substantially similar. *See Kohn Law Grp.*, 787 F.3d at 1240 (first-to-file rule does not

5   require exact identity of parties); *see Young*, 526 F. Supp. 3d at 705 (applying first-to-file rule to

6   later-filed class action involving similar classes of purchasers).

7       Here, the Defendant is identical in the two actions:  Abbott Laboratories.  To be sure, the

8   two cases are brought by different named Plaintiffs:  Plaintiffs Schavrien and Ulrich in this case

9   and Gutierrez in the earlier case.  But all three are California residents who purportedly purchased

10  Similac Go & Grow within the last four years.  Compl. ¶¶ 30–31; *Gutierrez* Compl. ¶ 5.  More to

11  the point, though, the named Plaintiffs in both cases purport to represent overlapping classes of

12  California consumers.  This is critical, because courts look past the identity of the named plaintiffs

13  and instead assess whether the classes in the two actions "represent ***at least some*** of the same

14  individuals." *Pedro v. Millennium Prod., Inc.*, 2016 WL 3029681, at *3–4 (N.D. Cal. May 27,

15  2016) (emphasis added); *Ruff v. Del Monte Corp.*, No. C 12-05251 JSW, 2013 WL 1435230, at

16  *3 (N.D. Cal. Apr. 9, 2013) (finding substantial similarity among putative classes in three

17  complaints and applying first-to-file rule); *see also Wallerstein*, 967 F. Supp. 2d at 1296 ("Courts

18  have held that proposed classes in class action lawsuits are substantially similar where both classes

19  seek to represent at least some of the same individuals.").  This standard is satisfied here, because

20  the plaintiffs in both cases purport to represent classes of California purchasers of Similac Go &

21  Grow in the last four years. *Compare* Compl. ¶ 71 ("All residents of California who, within four

22  years prior to the filing of this action, purchased the Products containing the Challenged

23  Representations on the Products' labels for purposes other than resale."), *with Gutierrez* Compl.

24  ¶ 72 ("All persons in the State of California who purchased the Product between 2021 and the

25  present.").

26      Nor does it matter that Plaintiffs' Complaint here also seeks a nationwide class of Similac

27  Go & Grow purchasers.  Compl. ¶ 71.  Only some overlap in the proposed classes is required, and

28  here the overlap is substantial. *See Pedro*, 2016 WL 3029681, at *3–4 (noting first-to-file rule's

8

1    focus on partial, rather than complete, overlap in alleged classes); *see also Young*, 526 F. Supp. 3d

2    at 705 (finding sufficient overlap between a California class and a nationwide class and applying

3    first-to-file rule).  Further, it is highly unlikely that the Plaintiffs would even seek—let alone

4    successfully certify—a nationwide class, because the Ninth Circuit has recognized that the material

5    differences between California's consumer protection laws and those of many other states

6    "overwhelm common issues and preclude predominance for a single nationwide class."  *See Mazza*

7    *v. Am. Honda Motor Co.*, 666 F.3d 581, 590-91, 596 (9th Cir. 2012) (vacating certification of

8    nationwide class).  This factor, too, favors dismissal.

9        **Similarity of the issues:**  This final factor favors application of the first-to-file rule so long

10   as the issues in the two cases, even if "not [] identical," are "substantially similar."  *Kohn Law*

11   *Grp.*, 787 F.3d at 1240.  In determining whether the issues are substantially similar, courts focus

12   on whether both actions share some "underlying factual allegations."  *See Zimmer v. Dometic*

13   *Corp.*, 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018); *Pedro*, 2016 WL 3029681, at *5

14   (similar issues exist where "claims in the earlier and later-filed lawsuits implicate 'common

15   facts'").

16       Here, the factual underpinnings of the allegations in *Gutierrez* and Plaintiffs' Similac Go

17   & Grow claims here are overwhelmingly alike.  Both sets of claims center on the same product,

18   both cases challenge the same labeling statements, and both do so for the same reasons.  Both

19   complaints contend that Abbott's marketing and labeling of Similac Go & Grow is misleading.

20   *See Gutierrez* Compl. ¶ 3 ("Defendants' misleading labeling caused Plaintiff and members of the

21   class to pay a price premium for the Product") *and see* Compl. ¶ 24 (describing "Abbott's false,

22   deceptive, and misleading claims").  Both Complaints focus on the alleged impact of Similac Go

23   & Grow on children under two years old.  *See Gutierrez* Compl. ¶ 2 ("The Product is harmful both

24   nutritionally and developmentally for children under two") *and see* Compl. ¶ 22 ("[T]hese

25   beverages, which are loaded with sugar, corn syrup, vegetable oils, and powdered milk, are

26   harmful to toddlers' health").  Both complaints even allege that some of the same labeling

27   statements are misleading and unlawful.  *See, e.g., Gutierrez* Compl. ¶¶ 13–14, 37–41 (challenging

28   "DHA" and "Brain Development"); Compl. ¶¶ 7–11 (same).  This final factor, too, favors

9

1  dismissal.

2        Courts commonly apply the first-to-file in similar circumstances.  For example, in

3  *Pacesetter*, the Ninth Circuit affirmed a district court's dismissal of a case on first-to-file grounds.

4  678 F.2d at 96–97.  There, the Ninth Circuit determined that both cases (1) involved the same three

5  parties, (2) centered on the validity and enforceability of the same patents, and (3) differed

6  substantively only in the remedy sought.  *Id*. at 95-96.  Similarly, in *Intersearch Worldwide, Ltd.*

7  *v. Intersearch Group, Inc*., the court dismissed the second-filed action, explaining that "dismissal

8  is proper where the court of first filing provides adequate remedies."  544 F. Supp. 2d 949, 963

9  (N.D. Cal. 2008).  There, the court found that all the requirements under the first-to-file rule were

10  met when (1) the second-filed matter was filed four months after the first, (2) the parties were

11  sufficiently identical even though an additional defendant was added in the later case, and (3) the

12  issues were sufficiently similar where, among other allegations, both cases pleaded unfair

13  competition and requested similar relief.  *Id.* at 958–59.  Courts in this district have even

14  acknowledged the applicability of the first-to-file rule to consumer labeling class actions like this

15  one.  *See Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *2–3 (N.D.

16  Cal. Sept. 12, 2012) (applying first-to-file rule to later-filed, duplicative consumer class action

17  centered on allegations that "All-Natural" label statements were misleading); *Young*, 526 F. Supp.

18  3d at 705 (granting defendant's first-to-file motion where issues were "virtually identical").  This

19  case should be no different.

20        Dismissal is the appropriate remedy here because the goal of judicial efficiency will be

21  best served by this Court declining to accept jurisdiction and because the two cases seek the same

22  remedies (monetary and injunctive relief).  *See Intersearch Worldwide, Ltd.*, 544 F. Supp. 2d 949

23  at 963 ("Dismissal is proper where the court of first filing provides adequate remedies.").

24  Permitting multiple litigations of nearly identical claims seeking the same remedies advances no

25  judicial purpose and risks conflicting decisions in substantially similar cases, both of which the

26  Ninth Circuit has cautioned district courts to avoid.  *See id.*  Indeed, these are the same interests

27  that led the courts in *Pacemaker* and *Intersearch Worldwide* to apply the first-to-file rule to dismiss

28  later-filed claims.  There is no reason to deviate from that precedent here.  At a minimum, however,

10

1    the Court should stay Plaintiffs' Similac Go & Grow claims pending a final, non-appealable

2    judgment in *Gutierrez*.

3        **B.    Plaintiffs' PediaSure claims should be dismissed because they constitute impermissible claim-splitting**

4

5        Plaintiffs' PediaSure-based claims should be dismissed under the doctrine prohibiting

6    claim-splitting.  In an earlier-filed action, Plaintiffs here were part of the certified classes of

7    California PediaSure consumers.  That class challenged PediaSure's labeling by way of the same

8    causes of action as here, including on the grounds that PediaSure allegedly contains too much

9    added sugar.  Plaintiffs cannot bring two separate suits challenging the same product label under

10   the exact same theory.

11       These circumstances fit squarely within what the claim-splitting doctrine prohibits.  That

12   doctrine safeguards defendants from the undue burden of facing repetitive litigation over identical

13   or substantially similar claims.  *Bojorquez v. Abercrombie & Fitch, Co*., 193 F. Supp. 3d 1117,

14   1123 (C.D. Cal. 2016).  This makes good sense:  Having spent the last six years disproving

15   Plaintiffs' claims in *VanCleave*, Abbott should not have to do so all over again here.  Nor should

16   court resources be spent adjudicating claims that are already being adjudicated in another forum.

17       In applying this doctrine, courts assess whether the plaintiff was, or is, a class member in

18   a previously certified class action involving the same transactional nucleus of facts.  *See id*. at

19   1123–25 (dismissing a later-filed class action in which the named plaintiff was a class member in

20   an earlier-filed class action); *Cook v. C.R. Eng., Inc*., No. CV 12-3515-GW CWX, 2012 WL

21   2373258, at *5-6 (C.D. Cal. June 21, 2012) (same result where plaintiff was named in both

22   actions).  Specifically, courts in this Circuit apply a four-criteria test, considering whether (1) rights

23   or interests established in an eventual judgment in the prior case would be destroyed or impaired

24   by prosecution of the second action; (2) substantially the same evidence will be presented in the

25   two actions; (3) the two suits involve the alleged infringement of the same right; and (4) the two

26   suits arise out of the same transactional nucleus of facts.  *See Bojorquez*, 193 F. Supp. 3d at 1125

27   (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982)).

28

11

1    While the "last of these criteria is the most important," *Costantini*, 681 F.2d at 1202, all

2    four are satisfied here.  *First*, if Plaintiffs' PediaSure claims are re-litigated here, Abbott's rights

3    arising from the verdict in *VanCleave* would be destroyed or at least impaired.  Plaintiffs should

4    not be permitted to re-try these losing claims here, because that would allow them to harass Abbott

5    with repetitive actions based on the same claims arising from the same purchases.  *Single Chip*

6    *Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007) (emphasizing

7    primary objective of rule against claim-splitting is preventing plaintiffs from harassing

8    defendants).

9    *Second*, substantially the same evidence has been or would be presented in both cases.

10    Both cases involve allegations stemming from statements on the PediaSure label that plaintiffs

11    contend misled buyers regarding the health benefits of the product in light of its added sugar

12    content, including the statement "Balanced Nutrition."  Compl. ¶¶ 24, 48; *VanCleave* FAC ¶ 5.

13    Indeed, the "Balanced Nutrition" statement, challenged here, was a critical focus of the trial that

14    just ended in Abbott's favor in Santa Clara County.  *See* Ex. C).  Testimony and documentary

15    evidence about the meaning of and Abbott's scientific substantiation for statements on PediaSure's

16    label was presented in Santa Clara County and would need to be presented again here.  But that's

17    far from all.  Other overlapping evidence includes sales data, regulatory evidence, consumer

18    survey evidence, internal market research, evidence on the benefits and other health effects of

19    added sugar, evidence on PediaSure's intended consumers, evidence on PediaSure's 27 vitamins

20    and minerals, three macronutrients, and other benefits—among countless other subjects.  Several

21    of the same fact witnesses would have to testify.  So would experts on the same topics.  And many

22    of the same documents would need to be introduced in evidence here as in *VanCleave*.  *See*

23    *Costantini*, 681 F.2d at 1202 (finding factor met where evidence was substantially same across

24    two cases even if second case included more evidence).

25    *Third*, both suits involve alleged infringement of the same consumer protection rights.  *See*

26    *VanCleave* FAC ¶ 18 (alleging violations of CLRA, the FAL, and UCL) *and see* Compl. ¶¶ 98,

27    114, 138 (also alleging violations of the CLRA, FAL and UCL).  Improper claim-splitting arises

28

12

1    when both lawsuits allege infringement of similar rights.  *Mendoza*, 30 F.4th at 887–89 (affirming

2    dismissal of second action on improper claim-splitting grounds).

3          *Finally*, the claims arise from the same transactional nucleus of facts in both cases:  the

4    labeling of PediaSure and its sale to California consumers.  *Single Chip Systems Corp.*, 495 F.

5    Supp. 2d at 1059 ("The doctrine of claim splitting bars a party from subsequent litigation where

6    the 'same controversy' exists.") (citing *Nakash v. Super. Ct.*, 196 Cal. App. 3d 59, 68 (1987)).

7    Causes of action need not be identical to originate from the same transactional nucleus of facts.

8    *See Sargent v. MaineHealth*, No. 2:22-cv-00006-JAW, 2022 WL 2132272, at *11 (D. Me. June

9    14, 2022) (applying claim-splitting doctrine where both cases centered on same employment

10   relationship and alleged improper termination despite claims in each case being based on different

11   legal grounds).  Here, both the *VanCleave* case and the current action are based on purchases of

12   PediaSure in California and alleged misstatements on the product's label.  *VanCleave* FAC ¶ 5;

13   Compl. ¶ 15.  The two complaints even allege that several of the same statements on PediaSure's

14   label are misleading.  *VanCleave* FAC ¶ 5; Compl. ¶ 20.  And for the same reasons.  *VanCleave*

15   FAC ¶ 16 (alleging that Abbott's "health and wellness" labeling statements on PediaSure products

16   are misleading given the product's added sugar content); Compl. ¶ 112 (describing how these

17   statements on PediaSure allegedly mislead reasonable consumers into believing that PediaSure is

18   a "healthy, nutritional drink"); *id.* ¶ 48 (alleging that characterizing PediaSure as providing

19   "Balanced Nutrition" is misleading in light of PediaSure's added sugar content)  It is undeniable

20   that both *VanCleave* and the present case originate from the same transactional nucleus of facts.

21         Courts in this Circuit regularly apply the claim-splitting doctrine in similar circumstances.

22   In *Bojorquez*, for example, the court dismissed the plaintiff's claims on claim-splitting grounds

23   where the plaintiff was a member of a certified class in an earlier-filed lawsuit against the same

24   defendants and both cases involved similar factual allegations involving employment practices.

25   193 F. Supp. 3d at 1121–22, 1124, 1127.  In its analysis, the court confirmed that being a member

26   of a certified class in a pending class action qualifies a plaintiff as a "party" for purposes of the

27   claim-splitting analysis.  *Id.* at 1124–25.  Likewise, in *Greene v. H & R Block Eastern Enterprises,*

28   *Inc.*, the court dismissed a later-filed class action under the claim-splitting doctrine because

13

1    plaintiffs in the later-filed action had not opted out of the certified class in the first-filed action.

2    727 F. Supp. 2d 1363, 1367–68 (S.D. Fla. 2010).

3         Dismissal is the appropriate remedy here too, because, as in *Bojorquez* and *Greene*, the

4    Plaintiffs here are class members in a prior filed lawsuit against the same defendant based on the

5    same transactional facts (their purchases of PediaSure in California since 2021).  Plaintiffs' efforts

6    to focus on fewer words from the PediaSure label in their First Amended Complaint does nothing

7    to change the analysis.  Plaintiffs are still alleging that they were misled to buy PediaSure because

8    the product has (and discloses that it has) more added sugar that Plaintiffs think it should have.

9    But those claims were already litigated and Plaintiffs should not have a second bite at the apple.

10   Put simply, Plaintiffs could have opted out of the *VanCleave* classes but did not; as a result, they

11   lost their PediaSure claims when the *VanCleave* jury reached its verdict in February.  At a

12   minimum, though, the Court should stay Plaintiffs' PediaSure claims pending a final, non-

13   appealable judgment in *VanCleave*.

14        **C.     Plaintiffs' claims should be dismissed for failure to state a claim.**

15        Beyond their procedural shortcomings, Plaintiffs' claims fail for failure to state a claim.

16   Plaintiffs assert three liability theories:

17        **1.     Added Sugar Theory:**  Plaintiffs allege that several statements on both products'

18             labels are false or misleading because the products purportedly contain too much

19             added sugar.  *See* Compl. ¶¶ 12, 24, 44–50.  As for Similac Go & Grow, Plaintiffs

20             challenge the following labeling statements under this theory: "Toddler Drink,"

21             "360 Total Care," and "12-36 months."  *Id.* ¶¶ 17, 43.  As for PediaSure, Plaintiffs

22             challenge the following labeling statements under this theory: "Complete, Balanced

23             Nutrition" and "Balanced Nutrition to Help Fill Gaps."  *Id.* ¶¶ 12, 24, 48.

24        **2.     "#1 Pediatrician Recommended Brand" Theory:**   Only as to PediaSure,

25             Plaintiffs challenge that the labeling statement "#1 Pediatrician Recommended

26             Brand" is false or misleading because a handful of publications authored by a

27             handful of physicians and physician groups have questioned "toddler formulas."

28             *Id.* ¶¶ 52–53.

14

3.     **DHA Theory:**  Plaintiffs allege that several statements on both products' labels are false or misleading because the ingredient DHA purportedly "does not support brain development." *Id.* ¶¶ 54–59.  Specifically, those statements are "DHA" and "Brain Development" on Similac Go & Grow (*id.* ¶¶ 17, 43) and "DHA Omega-3" on PediaSure (*id.* ¶¶ 20, 43).

All three theories fail because Plaintiffs have failed to allege facts sufficient to satisfy Rule 12(b)(6), much less Rule 9(b).  In addition, Plaintiffs' claim for injunctive relief should be dismissed for the independent reason that Plaintiffs lack standing.

### 1.     Plaintiffs have not satisfied Rules 12(b)(6) or 9(b).

Because all of Plaintiffs' claims sound in fraud, the Complaint must satisfy both the general plausibility standard under Rule 12(b)(6) and the more demanding standard under Rule 9(b) requiring that the Complaint "state with particularity the circumstances constituting fraud."[6]  The Rule 9(b) standard requires the Complaint to plead facts setting out not only "*what* is false or misleading about the purportedly fraudulent statement" but also "*why* it is false."  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (emphasis added); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  Further, it is not enough that Plaintiffs allege that they were misled, because at the pleading stage the Court applies an "objective" standard that demands more than "a mere possibility" that the challenged labeling statements "might conceivably be misunderstood by [a] few consumers viewing it in an unreasonable manner." *Becerra*, 945 F.3d at 1228 (citation omitted).  Rather, Plaintiffs must plausibly allege that a "significant portion" of reasonable consumers could be misled.  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  When applying this standard, courts must account for the "contextual inferences regarding the product" that a reasonable consumer would make.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

---

[6] Even if fraud is not an element of a particular claim, when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as a basis of [his] claim[s]," Rule 9(b) applies.  *Kearns*, 567 F.3d at 1125 (affirming application of Rule 9(b) to claims under California consumer protection statutes that "sound in fraud").  Here, all of Plaintiffs' claims— including their breach of warranty claims—rest on the same alleged "unified course of fraudulent conduct" such that Rule 9(b) applies to all claims.

1    None of the three liability theories meet these standards.

2              **a.    Plaintiffs' added sugar theory.**

3    Plaintiffs' added sugar theory should be dismissed for two independent reasons: (1) it fails

4    under a recent Ninth Circuit case, *Davidson v. Sprout Foods, Inc.*; and (2) Plaintiffs have failed to

5    plead that the products' added sugar content renders any of the challenged statements misleading

6    to reasonable consumers.

7    ***First***, Plaintiffs' added sugar theory is indistinguishable from *Davidson v. Sprout Foods,*

8    *Inc.*, 106 F.4th 842 (9th Cir. 2024).  There, the Ninth Circuit affirmed dismissal of a strikingly

9    similar added sugar theory.  *Id.* at 853.  Plaintiffs in *Sprout Foods* likewise alleged that certain

10   statements on the label of defendant's pouches of pureed food for children were misleading and

11   that the pouches were "harmful" because of added sugar, and that some commentators have

12   doubted whether the pouches are necessary or beneficial to children's nutritional health.  *Id.* at

13   847.  In rejecting this theory, the Ninth Circuit held that such allegations were insufficient under

14   Rule 9(b).  *Id.* at 853.  The Ninth Circuit reasoned that "Plaintiffs' allegations regarding harm are

15   largely unspecific to Sprout's products" and were "largely speculative."  *Id.*  As for the pouches'

16   sugar content, the Ninth Circuit found that allegations insufficient because they "lack[ed] context"

17   and because plaintiffs did "not explain at what level sugars become harmful or why the levels of

18   sugar in these products, in particular, could cause harm."  *Id.*

19   So too here.  Plaintiffs' allegations of harm because of the products' added sugar content

20   are entirely unspecific to Similac Go & Grow and PediaSure products.  *See* Compl. ¶¶ 45–51.

21   Similarly unconnected to the products at issue are Plaintiffs' generalized allegations of harm

22   regarding added sugar generically.  *Id.*  And while Plaintiffs purport to list the amount of added

23   sugar in each at-issue product, as in *Sprout Foods* they do not even attempt say at what amount

24   the added sugar content becomes harmful, with one exception: they say that for children under 2,

25   health authorities "recommend" no added sugar.  *Id.* ¶¶ 45, 50.  This allegation, though, cannot

26   save Plaintiffs from dismissal under *Sprout Foods*.  For one, PediaSure is intended for children

27   aged 2–13 (except under a doctor's guidance), so Plaintiffs' allegations of added sugar

28   recommendations for children under 2 is irrelevant to Plaintiffs' PediaSure claims.  As for Similac

16

1   Go & Grow, that some health authorities *generally* "recommend" avoiding added sugar hardly

2   means that the added sugar *in Similac Go & Grow* is harmful for children. *Id.* Just as in *Sprout*

3   *Foods*, Plaintiffs have failed to allege facts supporting "why the levels of sugar in these products,

4   *in particular*, could cause harm." 106 F.4th at 853 (emphasis added).

5         Thus, under *Sprout Foods* alone, the Court should dismiss Plaintiffs' added sugar theory.

6         ***Second,*** and independently, this is a false labeling case. Even if the amount of added sugar

7   in Similac Go & Grow or PediaSure were too high, that would not be enough to state a claim.

8   Rather, Plaintiffs must adequately allege that the amount of added sugar in the products somehow

9   rendered the challenged labeling statements false or misleading. Here, they have not and cannot.

10        As for the three Similac Go & Grow statements challenged under this theory—"Toddler

11  Drink," "360 Total Care," and "12-36 months"—none so much as mentions added sugar. Nowhere

12  in Plaintiffs' Complaint do they even attempt to connect these statements to added sugar. *E.g.*,

13  Compl. ¶¶ 45–51. Plaintiffs' conclusory allegations that they are nonetheless false or misleading

14  are insufficient. The same goes for the two PediaSure statements challenged under this theory:

15  "Complete, Balanced Nutrition" and "Balanced Nutrition to Help Fill Gaps." Neither mentions

16  sugar, and Plaintiffs have not alleged even in conclusory terms how these statements are rendered

17  false or misleading by PediaSure's added sugar content. *Id.*

18        Nor have Plaintiffs explained why reasonable consumers would be misled by these

19  statements given the express disclosure of added sugar in the federally-mandated Nutrition Facts

20  Panel on every product label. *See* Ex. A, Ex. B. Indeed, any reasonable consumer interested in

21  Similac Go & Grow's or PediaSure's sugar content could "review the product's ingredient list to

22  dispel or ameliorate any confusion that might be raised by" the challenged statements. *Cheslow*

23  *v. Ghirardelli Chocolate Co.*, 497 F. Supp. 3d 540, 546 (N.D. Cal. 2020); *McGinity v. Procter &*

24  *Gamble Co.*, 69 F.4th 1093, 1098–99 (9th Cir. 2023). Nothing in Plaintiff's Complaint is sufficient

25  to override that commonsense principle.

26              **b.    Plaintiffs' "#1 Pediatrician Recommended Brand" theory.**

27        Plaintiffs' second liability theory applies only to PediaSure. Specifically, Plaintiffs posit

28  that the statement "#1 Pediatrician Recommended Brand" is misleading. *See* Compl. ¶¶ 52–53.

17

1   Plaintiffs' sole basis for this allegation is that two articles have reportedly advised against "toddler

2   formula."  *See* Ex. D, Older Infant-Young Child "Formula"; Ex. E, Decreasing Community

3   Toddler Formula Use.

4           But both of those articles are about "toddler formulas"—which PediaSure is not.  For

5   example, the article titled *Older Infant-Young Child "Formulas"* discusses only "liquid nutritional

6   products referred to as 'formulas' [that] have been developed for the older infant and toddler of

7   separate age ranges and increasingly promoted by manufacturers in North America and elsewhere,

8   with different identities including 'transition formulas,' 'follow-on' or 'follow-up formulas,' or

9   'weaning formulas,' typically for children 6 to 24 months of age, and 'toddler milks or formulas,'

10  'growing-up milks,' or 'young child milks' generally for children 12 to 36 months of age."  *See*

11  Ex. C at 1–2.  That is not PediaSure, which is a nutritional supplement primarily designed for

12  children aged 2–13.  *See* Ex. B.  In contrast, the cited articles are about drinks closer to Similac

13  Go & Grow.  But that Similac Go & Grow is arguably among the "toddler formulas" referenced

14  by these articles is beside the point, because only PediaSure includes the challenged statement of

15  "#1 Pediatrician Recommended Brand."  Compl. ¶¶ 17, 20.

16          Regardless, Plaintiffs' suggestion that even on-topic articles could provide adequate

17  support for an allegation that PediaSure is not the "#1 Pediatrician Recommended Brand" falls far

18  short.  Whether or not some pediatricians or even health organizations have questioned a class of

19  products does not mean that one of those products is not the most recommended brand among

20  them.  Plaintiffs' suggestion otherwise is a *non-sequitur*.

21          Thus, Plaintiffs have failed to adequately allege how or why this statement is false or

22  misleading, as Rule 9(b) requires.

23                          **c.    Plaintiffs' DHA theory.**

24          Plaintiffs' final liability theory is that "DHA does not support brain development."  Compl.

25  ¶¶ 54–59.  Again, though, this is a false labeling case.  Accordingly, Plaintiffs must adequately

26  allege that the challenged labeling statements are rendered false or misleading to reasonable

27  consumers because "DHA does not support brain development."  They cannot.

28

18

As for Similac Go & Grow, there are two challenged statements pertinent to Plaintiffs' DHA theory.  *First*, Plaintiffs challenge the statement "DHA," which appears on the bottom half of the front of the label.  Compl. ¶ 18.  There is nothing remotely false or misleading about this statement.  Simply put, Plaintiffs do not allege (nor could they) that Similac Go & Grow does not contain DHA, which is all that this statement implies.  *Second*, Plaintiffs challenge the statement "Brain Development," which appears on the top right of the front of the label.  *Id.*  Plaintiffs' theory seems to be that this reference to "Brain Development" has something to do with DHA. Compl. ¶ 17.   But no reasonable consumer could conclude as much.   The words "Brain Development" and "DHA" are separated by more than half the label, including the product name, "by Similac," "toddler drink," and several differently colored bars, among other visual elements. Compl. ¶ 17.  No reasonable consumer would surmise that the reference to "Brain Development" is connected to "DHA."

As for PediaSure, there is only one challenged statement pertinent to Plaintiffs' DHA liability theory: "DHA Omega-3."  But Plaintiffs admit that DHA is "an omega-3 fatty acid," *see* Compl. ¶ 55, and they do not contest that PediaSure contains DHA, which is all that this statement implies.  And nowhere on the PediaSure label do the words "brain development" appear—even unconnected to the words "DHA Omega-3." Ex. B.  Plaintiffs' allegations that PediaSure labeling is false or misleading on this front are thus even more lacking than are their parallel allegations concerning Similac Go & Grow.

In sum, just because Plaintiffs assert (incorrectly) that DHA fails to "support brain development," that contention is irrelevant to deciding Abbott's motion to dismiss.  Plaintiffs' DHA theory claims fail at the pleading stage because Plaintiffs have not adequately alleged that reasonable consumers would conclude that the product labels at issue imply a connection between DHA and brain development. Plaintiffs have therefore failed to adequately allege how or why these statements are false or misleading, as Rule 9(b) requires.[7]

---

[7] In passing, Plaintiffs allege that the Similac Go & Grow challenged statements "DHA" and "Brain Development" are impermissible "nutrient content" claims under FDA regulations barring such claims on products intended for children under 2.  *See* Compl. ¶¶ 57–59.  But neither

## 2. Plaintiffs lack standing to pursue injunctive relief.

Plaintiffs' request for injunctive relief fails for two independent, additional reasons, each of which on its own merits dismissal. *First*, Plaintiffs lack standing for injunctive relief because there is no threat of immediate future economic harm from Abbott's product labeling. Plaintiffs' allegations confirm that they "know" the "truth" about the products. Further, Plaintiffs' own allegations about future purchases should be disregarded both because they nonsensically allege that they want to buy the products again despite also contending that the products are harmful to health and because, as to Go & Grow, neither Plaintiff alleges that he provides for a child between 1- and 3-years old, the age range for which the product is designed. *Second*, Plaintiffs do not adequately allege the absence of an adequate remedy at law; after all, they allege that they were harmed because they paid a premium price for the products. Even if it were true that Plaintiffs paid a purported price premium (it is not), that "extra cost" is the quintessential sort of economic harm that money damages remedies completely.

### a. Plaintiff's fail to allege a real threat of future harm.

Plaintiffs lack standing to pursue injunctive relief under Federal Rule of Civil Procedure 12(b)(1) because they do not plausibly allege any "real or immediate threat that [they] will be

---

statement qualifies under either subsection of the FDA regulations in effect during the relevant timeframe defining "nutrient content" claims: 21 C.F.R. § 101.13(b)(2)(i)–(ii). As for "DHA," subsection (i) applies to statements that "[d]escribe[] the food or an ingredient therein in a manner that suggests that a nutrient is absent or present *in a certain amount* (e.g., 'high in oat bran')." (emphasis added). But this challenged statement does not refer to any "certain amount" of DHA in Similac Go & Grow. Put differently, the reference to "DHA" on Similac Go & Grow is unlike the example given in subsection (i)—"high in oat bran"—because it simply mentions the ingredient without characterizing it as "high" or otherwise mentioning that it is absent or present in a "certain amount." Subsection (ii) is likewise inapplicable to the statement "DHA" because there is no suggestion that either product "because of its nutrient content, may be useful in maintaining healthy dietary practices." *Id*. § 101.13(b)(2)(ii). Rather, the labels just imply that the products contain DHA. The example given in subsection (ii)—"healthy, contains 3 grams (g) of fat"—is also instructive. In contrast to the subsection (ii) example, the statement "DHA" lacks a phrase such as "healthy" or some other such suggestion that the nutrient "may be useful in maintaining healthy dietary practices." *Id*. As for the other pertinent challenged statement, "Brain Development," it does not qualify under either subsection (i) or (ii) because it does not even refer to any "nutrient," which it must to qualify as a nutrient content claim. Because neither challenged statement qualifies as a "nutrient content" claim under the FDA regulations in effect at the time, they are not impermissible even on products intended for children under 2.

wronged again" in a similar way. *Urban v. Tesla, Inc.*, 698 F. Supp. 3d 1124, 1134 (N.D. Cal. 2023) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). Purely past wrongs alone are insufficient to establish the injury-in-fact required for Article III standing. *See Kimberly-Clark Corp.*, 889 F.3d at 967 (citing *Lyons*, 461 U.S. at 102–03). Rather, the Ninth Circuit has identified two potential future harms that could justify injunctions in product labeling cases: (1) the plaintiff's inability to rely on the product's labeling in the future, preventing them from purchasing the product even if desired; and (2) the likelihood that consumers will mistakenly believe the product has been improved, leading to future purchases and repeated injury. *See id.* at 969–70. Plaintiffs fail to plausibly allege either scenario.

As to the first potential future harm that might justify injunctive relief, although Plaintiffs express a desire to repurchase the products in conclusory terms, Compl. ¶¶ 30–31, the Court need not credit such unbelievable allegations. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts are not obligated to accept as true any merely conclusory allegations or those that are based on ***unreasonable inferences***). In order to credit Plaintiffs' allegations, the Court would have to accept both (1) Plaintiffs' allegations that the products are unhealthy and harmful to children and (2) Plaintiffs' contention that they (nonetheless) want to buy the products for their children to consume. Compl. ¶¶ 30–31. The first set of allegations (intent to repurchase) simply cannot be credited in conjunction with the second set of allegations (unhealthy and harmful products). And even if the Court did credit Plaintiffs' allegations that they want to purchase the products in the future, such allegations could not apply to Go & Grow, because neither Plaintiff alleges that he has a child under three. *See* Compl. ¶¶ 30–31. Unlike broader-use consumer products, plausibly alleging risk of future harm associated with purchases of age-specific products, such as those at issue, requires alleging that the Plaintiffs have an age-appropriate consumer in their household. *See In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig*., 707 F. Supp. 3d 103, 140 (D. Mass. 2023) (rejecting plaintiffs' hypothetical standing contention premised on unborn children or grandchildren); *see also In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II),* No. 20-15742, 2021 WL 3878654, at *1–2 (9th Cir. Aug. 31, 2021) (reversing district court's conclusion that consumer plaintiffs had standing to seek injunction because standing for

1   injunctive relief cannot be premised on "abstract interest in compliance with labeling
2   requirements").

3        As to the second potential future harm that might justify injunctive relief, the Complaint
4   demonstrates that Plaintiffs are aware of the supposed "truth" about the products and thus do not
5   need to rely on the labels' representations about the product and instead can just simply check the
6   products' nutrition label for ingredients.  *See Prescott v. Abbott Labs.*,736 F. Supp. 3d 775, 786
7   (N.D. Cal. 2024) (plaintiffs lacked standing for injunctive relief considering awareness of specific
8   ingredients and alleged associated health risks in products, negating "real and immediate threat of
9   repeated injury").[8]  Plaintiffs do not suggest they face a risk of future harm; rather, their allegations
10  are based solely on specific ingredients in the Defendant's products.  Plaintiffs are aware that these
11  ingredients are present in Similac Grow & Go and PediaSure, and the Complaint indicates that
12  they are now informed of the alleged health risks associated with those ingredients.  *See* Compl.
13  ¶¶ 39–40.  Consequently, this is not a case where plaintiffs must depend on the manufacturer's
14  future representations about the product.  Instead, they can simply review the ingredients list to
15  determine whether Similac Grow & Go and PediaSure contain added sugar and the other
16  ingredients at issue.  Therefore, Plaintiffs have not demonstrated any "real and immediate threat
17  of repeated injury" that would necessitate an injunction.  *See Kimberly-Clark Corp*, 889 F.3d at
18  967 (citation omitted).  In short, Plaintiffs have not plausibly alleged standing for injunctive relief
19  under either available prong.

20              **b.    Plaintiffs have an adequate remedy at law.**

21        Plaintiffs also fail to plausibly allege facts showing the absence of an adequate remedy at
22  law.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal
23  of plaintiff's claims for equitable relief under UCL and CLRA because plaintiff failed to
24  adequately allege a lack of legal remedy).  At the pleading stage, courts require plaintiffs seeking

25

26  ---
    [8] Alleging this case as a class action does not solve Plaintiffs' standing problem.  The possibility
27  that some members of the putative class might have standing is not considered because standing
    must be measured solely on the named plaintiffs.  *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d
28  1124, 1138 (N.D. Cal. 2017) (plaintiffs in a class action cannot rely on the potential future injury
    of unnamed class members to establish standing for injunctive relief).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1  equitable relief to allege facts describing why monetary damages will not fully compensate them.

2  *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC(GJSx), 2020 WL 5492990, at

3  *3 (C.D. Cal. Sept. 9, 2020) ("[C]ourts generally require plaintiffs seeking equitable relief to allege

4  some facts suggesting that damages are insufficient to make them whole.") (collecting cases); *see*

5  *also Sonner*, 971 F.3d at 844.  Here, the Complaint includes no such facts.  To the contrary,

6  Plaintiffs' allegations on this front are merely threadbare assertions that damages are insufficient.

7  *See* Compl. ¶ 70.  But Plaintiffs' claims are premised on allegedly playing an unwarranted price

8  premium, the quintessential sort of economic injury for which monetary damages—not injunctive

9  relief—are the proper remedy.  The Court should therefore dismiss Plaintiffs' claim for injunctive

10  relief on this basis as well.

11  **V.    CONCLUSION**

12          For these reasons, Abbott respectfully requests that the Court dismiss Plaintiffs' First

13  Amended Complaint.

14  Dated:  May 27, 2025                                Respectfully submitted,

15                                                      LATHAM & WATKINS LLP
                                                        Melanie M. Blunschi
16                                                      William J. Trach
                                                        U. Gwyn Williams
17                                                      Nathan A. Sandals

18

19                                                      By  */s/ William J. Trach*
                                                            William J. Trach

20                                                      Attorneys for Defendant
21                                                      Abbott Laboratories

22

23

24

25

26

27

28

23